IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CATHY SELLARS, CLAUDIA LOPEZ, and LESLIE FORTUNE, On behalf of themselves and all others similarly situated, | |
| Plaintiffs, | No. C15-0117 |
| vs. | RULING ON MOTION TO COMPEL |
| CRST EXPEDITED, INC., | |
| Defendant. | |

On the 28th day of October 2016, this matter came on for hearing on the Motion to Compel Discovery Responses (docket number 71) filed by Defendant CRST Expedited, Inc. ("CRST") on October 14, 2016. The Plaintiffs were represented by their attorney, Giselle Schuetz. CRST was represented by its attorneys, Kevin J. Visser, Lisa Stephenson, and Nicholas Petersen. The motion came on for additional hearing on November 9. Attorneys Schuetz and Petersen appeared at the reconvened hearing.

## I. PROCEDURAL HISTORY

On October 30, 2015, Plaintiffs Cathy Sellars, Claudia Lopez, and Leslie Fortune filed a complaint "on behalf of themselves and all others similarly situated." Plaintiffs seek relief under both state and federal law for alleged sexual discrimination, hostile work environment, and retaliation. CRST filed an answer on November 30, 2015, denying the material allegations and asserting certain affirmative defenses.

On March 4, 2016, the Court filed a Scheduling Order and Discovery Plan. On August 1, Plaintiffs timely filed a motion for class certification. That motion has been fully briefed and is now pending before the Court. On October 28, the Court granted

CRST's motion to stay the pretrial deadlines established in the Scheduling Order pending a resolution of Plaintiffs' motion for class certification.

## II. DISCOVERY

On April 21, 2016, CRST served each of the named Plaintiffs with its first set of interrogatories and request for production. On June 15, Plaintiffs served their objections and responses to CRST's discovery requests. CRST did not believe Plaintiffs' responses were adequate, and the parties then engaged in discussions to obtain additional information. Plaintiffs subsequently served supplemental responses and second supplemental responses. The parties were unable, however, to reach an agreement regarding the scope of discovery.

On October 14, 2016, CRST filed the instant motion to compel. There were a number of issues in dispute at the initial hearing on October 28, and the Court encouraged the parties to engage in additional discussions in an attempt to reach an agreement. At the second hearing on November 9, CRST advised the Court that there were four issues remaining: First, production of additional telephone records; second, production of Plaintiffs' income tax returns; third, production of additional records regarding Plaintiffs' employment history; and fourth, a supplemental response to interrogatory no. 15, regarding CRST's policies which Plaintiffs claim were violated.

## III. DISCUSSION

### A. Telephone Records

CRST seeks additional discovery regarding phone calls and text messages sent and received from Plaintiffs' cell phones. At the hearing, the parties focused on cell phone records for Claudia Lopez. Plaintiffs have produced 184 pages of phone records for Lopez, covering the entire period of time Lopez was employed by CRST. According to Ms. Schuetz, records regarding Sellars' cell phone are being prepared. Plaintiff Leslie Fortune used a prepaid phone and apparently similar phone records for her do not exist.

The Court was provided at the hearing with one page of Lopez's phone records, which is apparently representative of the remaining pages. In pertinent part, the record has five columns: "date and time," "number," "description," "type," and "min." The "date and time," identifies when the communication occurred. The "number" is apparently the number called or the number where an incoming call originated. The "description" indicates whether the call was incoming, or the location of the number being called (*e.g.*, DANVILLE/IL). On the exemplar page provided to the Court, approximately 75% of the calls have the date and time, number, and description redacted. According to Ms. Schuetz, Plaintiffs redacted "the numbers other than ones that we know to have been associated with someone who worked at CRST, or was otherwise affiliated with CRST in some way." That is, the redacted phone numbers are those which Ms. Lopez claims are not associated in any way with CRST.

CRST asks that it be provided with an unredacted phone record. According to Mr. Petersen, Lopez testified in her deposition that immediately following an alleged instance of harassment, she called a family member. Obtaining unredacted phone records may support or refute Lopez's claims regarding when harassing activity occurred. Ms. Schuetz advised the Court that if CRST identified "any such calls," then Plaintiffs "would be fine with going and finding that record and giving it to them." At the Court's suggestion, Mr. Petersen agreed that CRST would be willing to limit its request to those time frames when Lopez alleges wrongful conduct occurred.

The rule regarding the scope of discovery in general was recently amended as follows:
> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to

> relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Here, evidence regarding whether a plaintiff called anyone at about the time of the alleged abuse is relevant to Plaintiffs' claims and CRST's defenses. That is, whether a plaintiff called CRST, or the police, or a relative or friend may support or refute the allegation that wrongful conduct occurred. Plaintiffs already have the telephone record for Lopez, and the record for Sellars is apparently being produced. Accordingly, the burden or expense of "unredacting" Lopez's calls at around the dates when the wrongful conduct allegedly occurred would not seem to be particularly burdensome or expensive for Plaintiffs. The Court does not believe, however, that Plaintiffs need to provide unredacted telephone records for the entire time a plaintiff was employed at CRST. Rather, Plaintiffs must identify those dates when they claim actionable conduct occurred, and provide unredacted telephone records for the date of the incident, two days before the incident, and two days after the incident.

CRST also seeks production of relevant text messages. According to Ms. Schuetz, the only text messages available are those found on Sellars' phone, which Plaintiffs' counsel took into their possession. Ms. Schuetz conceded at the hearing that text messages with CRST personnel are discoverable, as well as any text messages with a family member "that mention the harassment in some kind of way." The Court orders the parties to confer and agree on appropriate search terms, with Plaintiffs then required to conduct a word search on Sellars' text messages, and produce all relevant text messages.

## B. Tax Returns

Plaintiffs have agreed to produce their tax returns for the years in which they were employed at CRST and afterward. However, CRST also seeks Plaintiffs' tax returns starting with 2011, prior to their employment at CRST.[1]

There is some split of authority regarding the standard to be applied in determining the discoverability of tax returns. The two views were succinctly stated by the Court in *Terwilliger v. York Intern. Corp.* as follows:

> Courts have made it increasingly clear that tax returns in the hands of a taxpayer are not privileged from civil discovery. Nevertheless, judicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns. Unnecessary disclosure of tax returns is to be avoided.
>
> Examination of case law reveals the emergence of a judicially developed "qualified privilege ... that disfavors the disclosure of income tax returns as a matter of general federal policy." A two-prong test has been utilized to assess whether the qualified privilege should be overcome and a party's income tax returns should be disclosed. The court must determine whether (1) the tax return is relevant to the subject matter in dispute; and (2) a compelling need exists for the return, because the information sought is not obtainable from other sources. While the party seeking discovery of the tax returns bears the burden of establishing its relevance, the resisting party has the task to identify an alternative source for the information.
>
> In contrast, a minority of courts have held that the sole inquiry governing discovery of tax returns is whether the information contained in the return is relevant.

---

[1] Fortune was first employed by CRST in October 2013, Sellars in December 2013, and Lopez in May 2014.

176 F.R.D. 214, 216-17 (W.D. Va. 1997) (all citations omitted).

While the Eighth Circuit Court of Appeals has not addressed this issue, it appears that most district courts in the Eighth Circuit have adopted the two-prong test described in *Terwilliger*. *See, e.g., E-P Intern. Distribution, Inc. v. A & A Drug Co.*, 2009 WL 1442534 (D. Neb. 2009) (observing that "many courts require a heightened showing of relevance and necessity before ordering the disclosure" of tax returns, and that "[w]hen applying this standard, most courts use a burden-shifting test"); *Sowers v. Gatehouse Media Missouri Holdings, Inc.*, 2009 WL 1106946 (E.D. Mo. 2009) (noting that "most courts apply a two-part test"); *EEOC v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008) (finding that "a preponderance of authorities set out a two-part standard for deciding whether tax returns should be disclosed").

CRST argues that Plaintiffs' pre-CRST income may be relevant to mitigation of damages. According to CRST, "[i]f plaintiffs are seeking front pay, such an award may be reduced if plaintiffs have failed to seek comparable employment given their age, education and experience."[2] Even if that's true, however, it does not necessarily mean that Plaintiffs are required to produce their income tax returns.

In their resistance, Plaintiffs cite multiple cases which hold that a plaintiff's prior wage history is not relevant. *See, e.g., Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 399 (W.D. Tenn. 2012) (holding that the "plaintiffs' prior wage history is not relevant to their damages or the issue of mitigation"). *See also Maxwell v. Health Ctr. of Lake City, Inc.*, 2006 WL 1627020 (M.D. Fla.) at *3; *Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002).

The Court concludes that CRST has failed to prove either prong of the two-prong test described in *Terwilliger*. Information regarding Plaintiffs' income prior to their

---

[2] CRST's Brief (docket number 70-1) at 16.

employment at CRST has marginal relevance, if any, to the instant complaint. Furthermore, the information is obtainable from other sources. Accordingly, CRST's demand for Plaintiffs' pre-CRST income tax returns will be denied.

## C. Employment Records

In interrogatory no. 10, CRST asks Plaintiffs for details regarding "disciplinary action at any place of employment." In request for production no. 28, CRST seeks copies of Plaintiffs' personnel files "or any other employment records" following her separation from employment with CRST. Mr. Petersen represented at the hearing that request no. 28 sought Plaintiffs' personnel files "both before and after CRST," but the document request is clearly limited to employment records "for the period following her separation from employment with Defendant."

Plaintiffs object to producing information regarding any "disciplinary action" prior to their employment at CRST, arguing that it is not relevant to the issues in this case. Ms. Schuetz conceded at the hearing, however, that disciplinary records found in post-CRST personnel files "are conceivably relevant and discoverable." Ms. Schuetz also agreed that evidence of a plaintiff making a sexual harassment claim with an employer pre-CRST would be discoverable, although that is not information sought in interrogatory no. 10, or specifically identified in request for production no. 28.

In *Schaack v. ABCM Corp.*, 2008 WL 5082165 (N.D. Iowa), I concluded that certain portions of prior employment records may be discoverable for the limited purpose of determining whether a plaintiff made similar complaints with previous employers. *See also Maxwell*, 2006 WL 1627020 (M.D. Fla.) at *4 ("[T]he Court finds that evidence relating to potential prior complaints of discrimination, harassment or allegations could be relevant and possibly admissible if the evidence shows such claims were frivolous."). I reach the same conclusion here. I am unconvinced, however, that CRST's request for "disciplinary records" at Plaintiffs' prior employers is relevant to these issues.

Accordingly, regarding pre-CRST employment, Plaintiffs are required to produce those portions of Plaintiffs' personnel files from previous employers referencing sexual harassment, hostile work environment, retaliation, or similar claims; but they are not required to produce details regarding disciplinary action at prior employers. Regarding post-CRST employment, Plaintiffs must produce the information sought in request for production no. 28.

### D. Interrogatory No. 15

In Interrogatory No. 15, CRST asks Plaintiffs to describe "in detail" their "understanding" of CRST's policies regarding unlawful harassment and discrimination. The interrogatory then asks Plaintiffs to state whether CRST complied with the policies and, if not, how and when the policies were violated. Finally, CRST asks Plaintiffs to state whether they claim its policies are "insufficient or inadequate" and, if so, how they are allegedly deficient..

Mr. Petersen notes that in the memorandum in support of the motion for class certification, Plaintiffs identify "policies" of CRST to refuse to find harassment and retaliating against complainants. Plaintiffs also allege three "patterns or practice" of discriminating and retaliating against complainants, failing to impose discipline on offenders, and failing to act promptly. Ms. Schuetz argued at the hearing that the interrogatory is "written in such a broad way" that it "encompasses essentially every fact within the case and would require a narrative constructing plaintiffs' entire case with all witnesses, all events, all facts, all documents." According to Schuetz, Plaintiffs have provided CRST with "a narrative for each of the three individual plaintiffs of all the events that she experienced at CRST that were harassing, all the times that she complained about it, whatever her awareness is of what CRST did in response, which is generally minimal."

The Court concludes that to the extent Plaintiffs claim that CRST violated any of its *written* policies, rules, regulations, or similar requirements, then Plaintiffs must identify

the specific policy and state when, where, and how it was violated. To the extent the interrogatory asks for similar information on unwritten policies, the Court concludes that no further explanation is required.

### IV. ORDER

**IT IS THEREFORE ORDERED** that the Motion to Compel Discovery (docket number 71) filed by CRST is **GRANTED in part** and **DENIED in part** as set forth above.

DATED this 8th day of December, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA