# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

Case No. 1:15-cv-00117-LTS

CATHY SELLARS, CLAUDIA LOPEZ and
LESLIE FORTUNE, individually and on behalf
of all others similarly situated,

          Plaintiffs,

vs.

CRST EXPEDITED, INC.,

          Defendant.

---

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLASSWIDE RETALIATION CLAIM

Kevin J. Visser, AT0008101
Nicholas Petersen, AT0012570
SIMMONS PERRINE MOYER
BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
kvisser@simmonsperrine.com
npetersen@simmonsperrine.com
Telephone: (319) 366-7641
Facsimile: (319) 366-1917

*Counsel for Defendant*

John H. Mathias Jr.*
James T. Malysiak*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
jmathias@jenner.com
jmalysiak@jenner.com
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Jessica Ring Amunson*
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
jamunson@jenner.com
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Pro hac vice* motion pending

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................3

    Factual Background..................................................................................................3

        *CRST's Business Model* ..................................................................... 3

        *CRST's Policies Against Sexual Harassment and Retaliation*............................... 4

        *CRST's Policies on Driver Pay*........................................................... 6

    Procedural History ...................................................................................................7

        *Prior Litigation Resolved in CRST's Favor* ........................................... 7

        *Plaintiffs' Certification Motion*........................................................... 9

LEGAL STANDARD.....................................................................................................10

ARGUMENT ..................................................................................................................11

I.    Plaintiffs Cannot Meet Their Burden Of Demonstrating That CRST Subjected Them To An Adverse Employment Action. ........................................................13

II.   Plaintiffs Cannot Show That Their Removal From The Truck Results From Retaliatory Animus Against Them For Complaining Of Sexual Harassment. ...................18

    A.   CRST Has Legitimate and Non-Retaliatory Reasons For Its Remedial Actions......... 19

    B.   The Record Lacks Any Evidence Of Pretext. ............................................. 21

CONCLUSION ...............................................................................................................26

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Entergy Corp.*, 181 F.3d 902 (8th Cir. 1999) ...................................................22

*Arraleh v. County of Ramsey*, 461 F.3d 967 (8th Cir. 2006) ...................................12, 22

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) ..............17

*Callanan v. Runyun*, 75 F.3d 1293 (8th Cir. 1996)........................................................20

*Carter v. Chrysler Corp.*, 173 F.3d 693 (8th Cir. 1999)................................................20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................10

*Clegg v. Arkansas Department of Correction*, 496 F.3d 922 (8th Cir. 2007) ..............16

*Donathan v. Oakley Grain, Inc.*, 861 F.3d 735 (8th Cir. 2017)........................18, 21, 25

*EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918 (N.D. Iowa 2009)........1, 7, 8

*EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012) .............8, 13, 19, 21

*Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917 (8th Cir. 2014) ....................................22

*Flores v. Tyson Foods, Inc.*, No. 4:12 cv 3089, 2014 WL 1365894 (D. Neb. Mar. 25, 2014) ....................................................................................................................14

*Haddon v. Executive Residence at White House*, 313 F.3d 1352 (Fed. Cir. 2002) ......16

*Hartnagel v. Norman*, 953 F.2d 394 (8th Cir. 1992) ....................................................10

*Hutton v. Maynard*, 812 F.3d 679 (8th Cir. 2016)........................................................21

*Jackson v. Delta Special School District Number 2*, 86 F.3d 1489 (8th Cir. 1996) .....19

*Jackson v. UPS*, 548 F.3d 1137 (8th Cir. 2008) ...........................................................18

*Jones v. Southeastern Pennsylvania Transportation Authority*, 796 F.3d 323 (3d Cir. 2015).....................................................................................................................15

*Joseph v. Leavitt*, 465 F.3d 87 (2d Cir. 2006)...............................................................16

*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007)........................................16

*Mercer v. Cook County*, 527 F. App'x 515 (7th Cir. 2013).............................14, 19, 22

*Mosley v. City of Northwoods*, 415 F.3d 908 (8th Cir. 2005).......................................10

*Nichols v. Tri-National Logistics, Inc.*, 809 F.3d 981 (8th Cir. 2016)....................1, 14, 19, 20, 21

*Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012) ...........................15, 16

*Singletary v. Missouri Department of Corrections*, 423 F.3d 886 (8th Cir. 2005).................15, 16

*Spears v. Missouri Department of Corrections & Human Resources*, 210 F.3d 850
    (8th Cir. 2000)...................................................................................................................13

*Thomas v. First National Bank of Wynne*, 111 F.3d 64 (8th Cir. 1997)........................................18

*Von Gunten v. Maryland*, 243 F.3d 858 (4th Cir. 2001), *abrogated on other*
    *grounds by Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S.
    53 (2006)...........................................................................................................................16

*Wagner v. Campbell*, 779 F.3d 761 (8th Cir. 2015) ............................................................... 16-17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................15

*Wierman v. Casey's General Stores*, 638 F.3d 984 (8th Cir. 2011) .............................................21

*Zirpel v. Toshiba America Information Systems, Inc.*, 111 F.3d 80 (8th Cir. 1997).....................20

STATUTES

42 U.S.C. § 2000e-3(a) .................................................................................................................11

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e *et seq.* .......................................................1

OTHER AUTHORITIES

49 C.F.R. § 391.11 .........................................................................................................................20

Fed. R. Civ. P. 56(a) .....................................................................................................................10

1 Barbara T. Lindemann et al., *Employment Discrimination Law*, ch. 15.III.B.
    (5th ed. 2012) ...................................................................................................................11

iii

Defendant CRST Expedited, Inc. ("Defendant" or "CRST"), by and through its undersigned counsel, and pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, moves for summary judgment on Plaintiffs' claim that CRST violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, in allegedly retaliating against women who complain of sexual harassment by removing those women from the harassing environment.[1]

## INTRODUCTION

The classwide retaliation claim that Plaintiffs advance in this litigation turns Title VII on its head. Unlike any previous retaliation case that CRST can locate, this case relies on the theory that an employer's remedial action in responding to allegations of sexual harassment is itself retaliatory. And what is more, the particular remedial practice that Plaintiffs challenge in this case has already been upheld twice by the Eighth Circuit as "the type of prompt and effective remedial action that our precedents prescribe*." EEOC v. CRST Van Expedited, Inc*., 679 F.3d 657, 693 (8th Cir. 2012); *see also Nichols v. Tri-Nat'l Logistics, Inc*., 809 F.3d 981, 987 (8th Cir. 2016). Classwide retaliation claims themselves are extremely rare. The retaliation claim certified in this case is unprecedented. Its success would require this Court to hold that employers violate Title VII when they respond to sexual harassment allegations by separating the accuser and the accused, providing the accuser with paid and temporary leave (and lodging and transportation costs, as applicable), relocating the accuser to a more suitable work environment, and investigating the harassment complaint. Plaintiffs' claim contravenes binding precedent and fails as a matter of law.

---

[1] This Court's scheduling order provides that CRST may file a summary judgment motion up to 30 days following this Court's ruling on any decertification motion. ECF No. 153 at 6. CRST has simultaneously filed a motion to decertify the classes. CRST reserves the right to move for summary judgment on the Hostile Work Environment class claims should this Court deny CRST's motion to decertify those claims.

*First*, Plaintiffs cannot meet their burden to establish that CRST took a materially adverse employment action against them. Plaintiffs argue that CRST's practice of removing the employee who claims harassment from the allegedly harassing environment constitutes an adverse employment action. Of course, this claim is incompatible with another claim advanced in this litigation—that CRST violates Title VII by *failing* to promptly remove complainants from the harassing environment. It is also meritless. Taking prompt remedial action to remove a complainant from an allegedly harassing environment cannot be an adverse employment action as a matter of law. To the extent Plaintiffs are not complaining about the removal *per se*, but instead about the economic consequences of removal, that claim fails as well under established Eighth Circuit precedent. Neither paid administrative leave nor temporary reassignment meets this circuit's standard for adverse employment actions. The circuit's binding precedent makes eminent sense: The Supreme Court has explained that only actions that well might dissuade reasonable workers from making a charge of discrimination qualify as adverse employment actions. In this case, CRST's stated practice of removing the complaining driver did not deter any of the class members from complaining, nor would it dissuade any reasonable employee from doing so.

*Second*, Plaintiffs cannot show that retaliatory animus motivated CRST's decision to remove them from the trucks after they complained of sexual harassment. Discovery has closed, and the fully developed record leaves no genuine dispute of material fact with respect to CRST's reasons for its remedial action. The company's legitimate business reasons for its approach— promoting safety, complying with licensing and ownership rules, and facilitating its prompt investigation into the conduct at issue—are fully consistent with Title VII. The record lacks any evidence from which Plaintiffs can establish that these reasons are pretextual and that the true

2

reasons are retaliatory. The fact that Plaintiffs might prefer a different remedial paradigm is of no moment, particularly where the alternative that Plaintiffs advance—removing the accused rather than the accuser—would jeopardize safety, impede CRST's investigatory efforts, potentially violate ownership and licensing rules, and prevent CRST from delivering freight consistent with its contractual obligations. Because the record evidence does not demonstrate any dispute regarding CRST's legitimate business reasons for its remedial practices, or support any argument of pretext, summary judgment on the classwide retaliation claim is proper.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In this action, Plaintiffs Cathy Sellars, Claudia Lopez, and Leslie Fortune (collectively, "Plaintiffs") accuse CRST of discriminating against its female over-the-road truck drivers by permitting a hostile work environment of severe and pervasive sexual harassment, and by retaliating against women who complain of sexual harassment. *See* ECF No. 2 ("Compl."). They claim that "CRST maintains a pattern or practice of retaliating against the Named Plaintiffs and members of the proposed class for opposing sexual harassment by taking action against workers who complain about sex discrimination," *id.* ¶ 102, and they seek to represent a class of female truck drivers allegedly subjected to this "pattern or practice," *id.* ¶¶ 106-107.

### Factual Background

***CRST's Business Model***: CRST is a leading long-haul freight transportation company. It has more than 3,300 drivers at any one time and operates the transportation industry's largest fleet of team drivers. *See* CRST's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment on Plaintiffs' Classwide Retaliation Claim ("SUMF"), filed herewith, ¶ 1. CRST operates by teaming together two drivers per truck so that one driver may sleep while the other is driving. *Id.* ¶ 2. This approach allows the truck to continue moving beyond the DOT Hours of Service daily limit per individual driver. *Id.* ¶ 3. CRST's team

3

drivers spend the vast majority of every day in a semi-tractor with a single coworker.  *Id.* ¶ 4.
The team drivers work and live in the tractor cab and often stay on the road for extended periods
of time.  *Id.* ¶ 5.  CRST's drivers include individuals who own or are leasing to own the vehicles
they operate, as opposed to driving a CRST vehicle.  *Id.* ¶ 6.  These drivers are known as
"owner-operators."

When drivers join CRST, the company requires them to undergo training by working
alongside experienced drivers—known as "lead drivers"—for a designated period of time.  *Id.*
¶ 7.  CRST policy prohibits student drivers from driving solo prior to the completion of their
over-the-road training.  *Id.* ¶ 8.  Once student drivers complete their training, they may team with
partners ("co-drivers") of their choosing.  *Id.* ¶ 10.

All driving teams are supervised by a driver manager based in Cedar Rapids, Iowa, the
company's headquarters.  *Id.* ¶ 11.  Drivers communicate with driver managers (also known as
"dispatchers" or "fleet managers") via phone, email, and CRST's messaging system, known as
"Qualcomm."  *Id.* ¶ 12.  Driver managers are responsible for ensuring that loads are delivered on
time and are evaluated on various metrics such as time percentage, overall mileage, and truck
utilization.  *Id.* ¶ 13.  They are also responsible for driver retention and addressing conflicts
between team drivers.  *Id.* ¶ 14.

***CRST's Policies Against Sexual Harassment and Retaliation:***  CRST has a written
policy prohibiting sexual harassment in its workplace.  *Id.* ¶ 21.  The policy also bars other forms
of unlawful employment discrimination and retaliation.  *Id.* ¶ 22.  CRST communicates this
policy in the Handbooks and Statement of Policy that it distributes to drivers and home office
employees, including driver managers.  *Id.* ¶ 23.  CRST also emphasizes this policy in a
dedicated session at driver orientation, where qualified trainers present the policy and provide

4

each driver with a stand-alone copy. *Id.* ¶ 24. The policy states that CRST "prohibits sexual harassment"; provides that those who report it "will NOT be subject to ANY form of retaliation"; sets forth a complaint procedure; and charges personnel with reporting responsibilities. *See id.* ¶ 25. CRST also addresses sexual harassment in its Code of Business Ethics, which prohibits harassment based on sex and mandates immediate reporting "to the appropriate Supervisor or the Human Resources Department." *Id.* ¶ 26.

The Handbook addresses how to report harassment. It instructs that "[i]f an employee believes he or she is being subjected to verbal or physical harassment, the employee should immediately contact his or her Driver Manager or the Human Resources Department to inform them of the situation and to request a new lead driver." *Id.* ¶ 27. The Handbook further provides that "[a]n employee has the right to request a new driver without fear of retaliation. Any employee who reports any act of harassment and/or discrimination will NOT be subject to ANY form of retaliation." *Id.* ¶ 28.

All drivers sign an acknowledgement form indicating that they have received and reviewed the CRST Driver's Handbook and Statement of Policy, including the policy on sexual harassment and retaliation. *Id.* ¶ 29. Drivers must explicitly certify their understanding that employees who complain about any form of harassment or discrimination (and not just sexual harassment) will be removed from that situation. *Id.* ¶ 30. The acknowledgement states,

> I also understand and agree that if I believe I am being subjected to harassment or discrimination, no matter how severe or pervasive, I will immediately report it to my fleet manager or to the Human Resources Department directly so that I may be removed from the harassing situation and so that CRST may conduct a prompt investigation.

*Id.* This acknowledgement accurately reflects CRST's practice of removing the complaining employee from his or her environment unless there is a special reason why CRST is unable to do so—for example, because the complainant is the lead driver or the owner-operator. *Id.* ¶ 35.

5

When CRST receives a complaint of sexual harassment, its first priority is the safety of the complaining driver. CRST takes steps to separate the drivers quickly and safely. *Id.* ¶ 31. When a dispatcher receives a call, Qualcomm message, or other communication from a driver who alleges sexual harassment, the dispatcher must take immediate steps to ensure the safety of the complainant and advance the investigation into the complaint. *Id.* ¶ 32. CRST equips dispatchers to provide immediate and effective responses to complaints of sexual harassment—including authority to separate the employees, to arrange necessary accommodations for the complainant (including a hotel stay and transportation), and to pay or reimburse for those accommodations. *Id.* ¶ 33.

***CRST's Policies on Driver Pay***: CRST's drivers are paid on a per-mile basis using a "split mileage system." *Id.* ¶ 15. Under this system, each driver is paid at his or her personal rate for half of the total miles driven by the truck (regardless of the number of miles the driver personally drives). *Id.* ¶ 16. The personal rate varies with the driver's length of experience. *Id.* ¶ 17. As Plaintiffs have acknowledged: "Under the split mileage rate pay system, drivers only earn pay when they are driving a truck." ECF No. 35-1 at 6. Although the split mileage system is the standard payment method at CRST (and throughout the long-haul transportation industry), the company provides certain other compensation benefits in certain circumstances. SUMF ¶ 18. A driver may receive "layover pay" if a truck is "available from empty time to dispatched pickup time" for certain specified lengths of time, and may receive compensation for periods away from the terminal or home due to breakdown or impassable highway conditions. *Id.* ¶ 19. Layover and breakdown compensation is calculated using daily rates, and those rates are standard regardless of the driver's length of experience. *Id.* ¶ 20.

On July 1, 2015, CRST promulgated a new Layover Pay Policy specific to individuals who lodge complaints of harassment or discrimination. *Id.* ¶ 44. As that Policy states:

> CRST provides team drivers with multiple venues to report concerns related to harassment and discrimination. Upon a report of harassment or discrimination, CRST staff actively engages with each driver to ensure their safety. Normally, the driver making the complaint (Complainant/Accuser) is removed from the truck expeditiously and routed to a safe haven. The objective here is safety first. If the situation warrants, police will be called to ensure that no incidents transpire while the driver is packing up and exiting the truck. CRST exemplifies a culture that is fair and consistent with regard to pay and lodging to employees who report Title VII concerns. A team driver will not be penalized, financially, for reporting a bonafide concern. In addition, CRST enforces zero tolerance for retaliation.

*Id.* ¶ 45. The Policy further provides that when a complaint of harassment is made, the dispatcher will "make arrangements to remove the Accuser from the truck" unless the removal of the accuser from the truck means that there will not be any qualified driver for the truck. *Id.* ¶ 46. CRST ensures that the driver removed from the truck has sufficient funds for lodging and transportation costs (which the driver does not have to pay back), and CRST immediately commences an investigation. *Id.* ¶ 47. CRST also helps the driver removed from the truck to quickly locate a new co-driver. *Id.* ¶ 43. CRST pays the driver removed from the truck a daily amount equal to ten times the highest minimum wage in the country (originally $100 per day and currently $110 per day) until CRST can pair that driver with a new co-driver. *Id.* ¶ 49. Prior to July 2015, where there was a delay in the pairing and continuation of driving that exceeded 48 hours, a driver complaining of harassment was eligible to receive the standard layover pay of $40 per day. *Id.* ¶ 50.

## Procedural History

***Prior Litigation Resolved in CRST's Favor***: Before Plaintiffs brought this action, the Equal Employment Opportunity Commission ("EEOC") brought a similar action that likewise challenged how CRST handles and responds to complaints of sexual harassment. The action

alleged that female drivers experienced severe and pervasive sexual harassment and that it was CRST's "standard operating procedure" to tolerate that sexual harassment. The district court rejected the EEOC's allegations and granted summary judgment to CRST on that claim. *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 941-46 (N.D. Iowa 2009) (Reade, J.). In its opinion, the court described CRST's policies against discrimination and retaliation, the avenues available to CRST employees for reporting sexual harassment, and CRST's practices in responding to such reports. *Id.* Those policies, avenues, and practices remain in place today and have been augmented (by the more generous Layover Pay Policy that CRST implemented in 2015). Judge Reade's opinion in that litigation ultimately held that "a reasonable jury could not find that it is CRST's 'standard operating procedure' to tolerate sexual harassment." *Id.* at 952 (citation omitted).

The Eighth Circuit affirmed Judge Reade's conclusions. *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012). It held that "as a matter of law, CRST promptly and effectively remedied the sexual harassment once it became aware of it." *Id.* at 692. In reaching that conclusion, the Eighth Circuit explicitly relied on CRST's policies and practices of "(1) removing the woman from the truck as soon as practicable, arranging overnight lodging at a motel and subsequent transportation to a CRST terminal at the company's expense; (2) requesting a written statement from the woman; (3) relieving the woman from future assignments with the alleged harasser; and (4) reprimanding the alleged harasser and barring him from team-driving with women indefinitely." *Id.* at 693. "These actions," the Eighth Circuit held, "constitute the type of prompt and effective remedial action that our precedents prescribe." *Id.*

***Plaintiffs' Certification Motion***:  Plaintiffs filed this action on October 30, 2015, and they moved for class certification on August 1, 2016.  Plaintiffs identified three allegedly "retaliatory policies" forming the basis of their pattern or practice retaliation claim, but this Court rejected two of them.  As to those alleged policies—"[i]mposing transit and lodging costs incurred as a result of women's harassment complaints upon the women themselves" and "[e]xtending the student driver training of women who complain of sexual harassment"—this Court explained that, "even if there was a pattern or practice, it would not be sufficiently common to all putative class members."  ECF No. 85 ("Op.") at 30, 37-38.  As a result of these Rule 23(a) deficiencies, this Court certified a narrower set of claims and issues than Plaintiffs had proposed.  This Court's order granted certification of two classes pursuant to Rule 23(b)(3):

> a.  The Hostile Work Environment Class: All women who were or are employed as team truck drivers by CRST Expedited, Inc. at any time from October 12, 2013 to the present, who have been subjected to a hostile work environment based on sex as a result of any of the following alleged CRST policies:
>
> (1)  failing to find their complaints were corroborated without an eyewitness or admission,
>
> (2)  failing to discipline drivers after complaints were corroborated; and
>
> (3)  failure to discipline DMs for failing to promptly respond to sexual harassment complaints.
>
> b.  The Retaliation Class: All women who were or are employed as team truck drivers by CRST Expedited, Inc. at any time from October 12, 2013 to the present, who have been subjected to retaliation based on sex as a result of CRST requiring them to exit the truck in response to their complaints of sexual harassment.

*Id*. at 54-55.  The order also certified certain issues pursuant to Rule 23(c)(4)(A)—namely, whether CRST actually maintains any of the alleged policies outlined in the class definition.

In certifying these classes, this Court summarized Plaintiffs' complaint as alleging that "CRST retaliates against women complaining of sexual harassment by subjecting them to

'unpaid suspension' in requiring them to get off the truck upon making a complaint." *Id.* at 36. The Court acknowledged CRST's arguments "that in responding to a harassment complaint, safety is its top priority and that individual circumstances determine who gets off the truck and who stays." *Id.* Those circumstances include "that owner-operators cannot be separated from their own trucks and students cannot drive a truck alone"—i.e., reasons related to "licensing and truck ownership," rather than retaliation. *Id.* The Court noted that whether CRST's removal of complainants from the truck "amounts to discriminatory retaliation is a question for another day." *Id.* at 36-37.

That day has arrived. Discovery has now concluded, and the record evidence leaves no triable issue with respect to the classwide retaliation claim. CRST asks this Court to find that the classwide retaliation claim fails as a matter of law. Once the Court resolves this motion, CRST asks the Court to consider its separate motion for decertification, which CRST submits simultaneously with this summary judgment motion.

## LEGAL STANDARD

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(a)).

The party moving for entry of summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the non-moving

party must go beyond the pleadings and—by depositions, affidavits, or otherwise—identify specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The non-movant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If the non-movant fails to make that showing with respect to an essential element of a claim or defense on which it bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

## ARGUMENT

As this Court has already stated, "[t]o prove a claim of retaliation, plaintiffs must demonstrate (1) that they engaged in a statutorily-protected activity, (2) that they subsequently suffered an adverse employment action and (3) [that there is] a causal connection between the adverse employment action and the protected activity." Op. at 29-30 (citing *Schoffstall v. Henderson*, 223 F.3d 818, 826 (8th Cir. 2000)). This Court further explained that "[i]f plaintiffs are able to establish these elements, the burden would shift to the defendant to articulate a legitimate non-discriminatory reason for its adverse employment action." *Id.* at 30. If the defendant satisfies that burden, "[p]laintiffs would then have the opportunity to show that the non-retaliatory reason provided was pretext and that the true reason for the adverse action was discrimination." *Id.* (citing *Musolf v. J.C. Penney Co.*, 773 F.3d 916, 918-19 (8th Cir. 2014); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Plaintiffs cannot meet their burden. *First*, Plaintiffs cannot show that they suffered any materially adverse employment action.[2] Removing employees from the harassing environment

---

[2] CRST assumes for present purposes that each individual plaintiff could demonstrate a reasonable and good faith belief that the behavior about which she was complaining violated Title VII. The opposition clause of 42 U.S.C. § 2000e-3(a) extends protection only where the actions opposed by the employee actually violate Title VII or where "the employee had a reasonable and good faith belief that the practice opposed constituted a violation of Title VII." 1 Barbara T. Lindemann et al., *Employment Discrimination Law*, Ch. 15.III.B., at 15-13 (5th ed.

about which they are complaining cannot itself constitute an adverse employment action, let alone a material one. And to the extent Plaintiffs are really complaining about being placed on what amounts to temporary and paid administrative leave, the Eighth Circuit has held that being placed on such leave does not, as a matter of law, qualify as an adverse employment action under Title VII's retaliation provision. In any event, Plaintiffs have not offered any evidence that their removal from trucks and their receipt (or even non-receipt) of layover pay materially affected their future career prospects at CRST, or that CRST's acknowledged practice of removing the complainant would dissuade a reasonable employee from complaining.

*Second*, even if Plaintiffs could show that they suffered an adverse employment action, they cannot demonstrate that retaliatory animus motivated that action. To the contrary, it is undisputed that CRST removes employees who complain of sexual harassment from the harassing environment for legitimate, non-retaliatory reasons: to promote employee safety, to comply with licensing requirements and ownership rules, and to facilitate CRST's immediate investigation into the alleged harassment. Although Plaintiffs suggest that CRST could instead remove the accused employee from the truck, that practice is unworkable, and it would require this Court "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers," which binding precedent forbids. *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) (quoting *Kincaid v. City of Omaha*, 378 F.3d 799 (8th Cir. 2004)). In most cases, the accused employee is either (1) the owner-operator of the vehicle, leaving CRST with no authority to remove that employee from the truck; or (2) the only

---

2012). In order to recover for a retaliation claim, each and every Plaintiff will be required to show that she had a reasonable and good faith belief that the behavior about which she complained was actually severe and pervasive enough to violate Title VII. Presumably, this showing is among the issues that the Court intends to resolve in Phase II of this litigation, should that ever become necessary. For purposes of this motion only, CRST assumes that Plaintiffs can make such a showing; however, CRST intends to contest this point at a later phase, if necessary.

qualified driver on the vehicle, meaning that removing the accused employee would leave no one to operate the truck and deliver its load. Accordingly, even if Plaintiffs can meet their burdens to show an adverse employment action (which they cannot), their claims fail at the final step of the analysis: They cannot demonstrate a genuine dispute of material fact that CRST's legitimate reasons are actually pretexts for retaliation against those who complain of sexual harassment.

## I. Plaintiffs Cannot Meet Their Burden Of Demonstrating That CRST Subjected Them To An Adverse Employment Action.

Under the Eighth Circuit's binding precedent, Plaintiffs cannot establish an adverse employment action. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Mo. Dep't of Corr. & Human Res*., 210 F.3d 850, 853 (8th Cir. 2000) (citations omitted). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard." *Id.* By contrast, "minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." *Id.*

As an initial matter, the adverse employment action that the Plaintiffs claim is unclear. In their class certification briefing, Plaintiffs centered their retaliation claims on CRST's practice of removing complaining employees from the truck. The Court's definition for the Retaliation Class follows suit, identifying the class members as women "subjected to retaliation based on sex as a result of CRST requiring them to exit the truck in response to their complaints of sexual harassment." Op. at 55. But surely Plaintiffs cannot be alleging that removal from the harassing situation is itself an adverse employment action. After all, that allegation would directly contravene other claims that Plaintiffs assert based on the alleged failure of management to respond quickly enough to complaints of harassment *by promptly removing the complaining employee from the truck. See, e.g.*, Compl. ¶¶ 86-88.

Removing a complainant from an allegedly harassing environment is not, as a matter of law, an adverse employment action. The Eighth Circuit has twice endorsed CRST's remedial actions in response to harassment complaints as exactly "the type of prompt and effective remedial action that our precedents prescribe." *CRST Van Expedited, Inc.*, 679 F.3d at 693 (describing CRST's methods of responding to complaints—including "removing the woman from the truck as soon as practicable, arranging overnight lodging at a motel and subsequent transportation to a CRST terminal at the company's expense"—as fully consistent with Title VII); *see also Nichols*, 809 F.3d at 987 (same). Decisions from other courts are in accord. *See, e.g.*, *Mercer v. Cook Cty*, 527 F. App'x 515, 522 (7th Cir. 2013) (rejecting the plaintiff's argument that her reassignment to a different division away from the alleged harasser, without any substantial changes in working conditions, constituted an adverse employment action); *Flores v. Tyson Foods, Inc*., No. 4:12-CV-3089, 2014 WL 1365894, at *6 (D. Neb. Mar. 25, 2014) (finding "no evidence of an adverse employment action or of any retaliation that could be submitted to a jury" where "defendant offered plaintiff a new job position away from her harasser").

Undoubtedly realizing that removal from the truck cannot be an adverse employment action, Plaintiffs appear to have shifted their focus somewhat. Rather than claiming that removal from the truck itself constitutes an adverse employment action, Plaintiffs now seem to claim that it is the potential economic consequences of the removal that are the problem. *See* ECF No. 114 at 15 ("Plaintiffs' allegation is that Defendant's policy of removing women from trucks is retaliatory in that it amounted to unpaid suspension for lodging sexual harassment complaints, because a woman pulled off her truck stops earning pay, whereas the alleged harasser (who continues driving) keeps earning."). But that claim fares no better. CRST's removal of the

complaining employee is tantamount to placing the complaining employee on paid administrative leave. When CRST removes a complaining employee from an allegedly harassing environment, the company works with that employee not only to investigate the complaint, but also to locate a new co-driver for the employee. SUMF ¶ 43. While CRST is taking those steps, the employee is eligible for layover pay. Prior to July 2015, the employee could receive layover pay at a rate of $40 per day for any delay longer than 48 hours in locating a new co-driver.[3] *Id.* ¶ 50. Since July 2015, the employee receives HR layover pay in a daily amount equal to ten times the California minimum wage, starting on the date that the employee was removed from the truck, and ending on the date that the employee pairs with a new co-driver. *Id.* ¶ 49. That amount has climbed from $100 per day when CRST implemented the new policy in July 2015 to $110 per day at present. *Id.* Because CRST otherwise pays drivers only on a per-mile basis, and not during frequent and sometimes lengthy breaks between load assignments, receiving layover pay is akin to being placed on paid administrative leave in CRST's unique working environment.

The Eighth Circuit has held that placing an employee on paid administrative leave is not an adverse employment action as a matter of law. *See Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005) ("[F]ind[ing] the reasoning of Fourth, Fifth, and Sixth circuits persuasive and hold[ing] that [the plaintiff] did not suffer an adverse employment action by being placed on administrative leave."); *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d

---

[3] In their briefing on class certification, Plaintiffs argued that some women did not receive any layover pay in the period prior to July 2015. *See* ECF No. 65 at 23-24 (arguing that CRST paid layover pay in only two of eight scenarios pre-July 2015). This anecdotal evidence about two women does not raise a genuine issue of material disputed fact with respect to CRST's stated policy of paying layover pay, and it cannot sustain a pattern-or-practice retaliation claim, which requires "significant proof" that the employer "operated under a general policy" that violates Title VII. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011) (quotation marks omitted).

996, 1007-08 (8th Cir. 2012) (holding that "[p]lacement on paid administrative leave" is not an adverse employment action because it is not a tangible change to a working condition that produces a material employment disadvantage) (citations omitted)).  This binding precedent accords with decisions in the Second, Third, Fourth, Fifth, Sixth, and Federal Circuits holding that paid administrative leave does not, as a matter of law, constitute an adverse employment action.  *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (agreeing with other "sister courts that a suspension with pay, 'without more,' is not an adverse employment action under the substantive provision of Title VII"); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) ("[P]lacing [the employee] on paid leave - whether administrative or sick - was not an adverse employment action."); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (joining other federal circuit courts in holding that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action"); *Haddon v. Exec. Residence at White House*, 313 F.3d 1352, 1363-64 (Fed. Cir. 2002) (agreeing that a short-term suspension without loss of pay to conduct an internal investigation does not constitute an adverse employment action); *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (holding that short term paid leave to conduct investigation did not amount to an adverse employment action), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  Simply put:  "An 'adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.'  Placement on paid administrative leave pending an investigation does not meet this standard." *Pulczinski*, 691 F.3d at 1007-08 (quoting *Chappell v. Bilco Co.*, 675 F.3d 1110, 1117 (8th Cir. 2012)); *see also Singletary*, 423 F.3d at 891-92.

But even if this Court declines to analyze removal of the complaining employee as paid administrative leave, binding Eighth Circuit precedent nonetheless requires that the Court find no material adverse employment action in these circumstances. There is no dispute that an employee's status while waiting to be reassigned is temporary. The Eighth Circuit has repeatedly held that "temporary reassignment itself is not an adverse employment action." *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 928 (8th Cir. 2007). Indeed, "'[m]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not' rise to the level of an adverse employment action." *Wagner v. Campbell*, 779 F.3d 761, 766-67 (8th Cir. 2015) (quotation marks and citation omitted). In this case, Plaintiffs have adduced no evidence that CRST's policy or practice is to discharge drivers following a complaint. Similarly, there is no evidence in the record showing that drivers who complain of sexual harassment suffer any material employment disadvantage with respect to their future prospects at CRST. At most, removal from the truck while CRST assists with lodging and transportation costs and with locating a new co-driver amounts to a temporary disruption to the complainant. Plaintiffs have pointed to no instance in which reassignment to a new co-driver took more than two weeks, and most reassignments took place within a few days. *See* ECF No. 65 at 20-24 (documenting experiences of Named Plaintiffs in being reassigned to new co-drivers in a matter of two days to two weeks). Because Plaintiffs have not offered any evidence that complaining of harassment materially affected their careers at CRST, the temporary change in status resulting from a complaint cannot meet the standard for an adverse employment action.

In any event, Plaintiffs cannot show that the allegedly retaliatory policy would have dissuaded any reasonable employee from making a complaint of discrimination. As the Supreme

Court held in *Burlington Northern*: "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). The Supreme Court limits actionable retaliation to circumstances where the allegedly retaliatory policy "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Plaintiffs cannot meet that standard in this case. All employees receive notice when they join the company that it is CRST's policy to remove a complaining employee from the truck in the event of a harassment allegation. *See, e.g.*, SUMF ¶ 36. They even sign an acknowledgement form reflecting their understanding that CRST removes complaining employees from the harassing situation "so that CRST may conduct a prompt investigation." *Id.* This understanding did not deter any of the class members from lodging complaints, and the practice would not as a matter of law dissuade a reasonable CRST employee from doing the same. *Cf. Jackson v. UPS*, 548 F.3d 1137, 1142-43 (8th Cir. 2008) (holding that a company's decision to keep employee in disqualification status pending resolution of her grievance would not have dissuaded a reasonable employee from making a complaint of discrimination). Accordingly, even if this Court declines to apply binding Eighth Circuit precedent regarding paid administrative leave and temporary reassignment, the alleged adverse employment action at issue fails under the Supreme Court's *Burlington Northern* test.

## II.    Plaintiffs Cannot Show That Their Removal From The Truck Results From Retaliatory Animus Against Them For Complaining Of Sexual Harassment.

Even if Plaintiffs were able to show that removal from the truck constitutes a materially adverse employment action, their claim fails at the next step. Plaintiffs cannot demonstrate that CRST has an unlawful motive. As the Eighth Circuit has held: "The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for

cause' of the adverse employment action." *Donathan v. Oakley Grain, Inc*., 861 F.3d 735, 739 (8th Cir. 2017). To satisfy that burden, Plaintiffs must "show[] a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997) (quotation marks omitted) (first bracket added). Plaintiffs have adduced no evidence that their removal from trucks upon complaining of sexual harassment is motivated by unlawful animus. To the contrary, the record leaves no dispute that CRST removes complaining employees from trucks for legitimate reasons: to protect employee safety and well-being, to comply with licensing and truck ownership rules, and to facilitate a prompt and efficient investigation into the complaint. These reasons are entirely consistent with Title VII.

### A. CRST Has Legitimate and Non-Retaliatory Reasons For Its Remedial Actions.

Under the burden-shifting analysis applicable here, "[o]nce [plaintiffs'] prima facie showing is made, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Jackson v. Delta Special Sch. Dist. No. 2*, 86 F.3d 1489, 1494 (8th Cir. 1996). "If the employer meets that burden, the presumption of retaliation . . . disappears." *See id.* Thus, even if this Court holds (and it should not for the reasons stated in Part I) that Plaintiffs have carried their burden to establish a *prima facie* case of retaliation, the Court must nonetheless find no violation of Title VII's anti-retaliation provision as a matter of law because CRST has legitimate and non-retaliatory reasons for its remedial actions.

The primary reason for CRST's remedial actions is the company's concern for safety. As CRST makes clear to all of its employees: "The objective here is safety first." SUMF ¶ 45.

Removing an employee from the truck promotes safety in several respects. It protects the safety of the complaining employee by removing that employee from the allegedly harassing environment—which is a well-recognized legitimate justification for transferring an employee. *See, e.g.*, *CRST Van Expedited, Inc.*, 679 F.3d at 693; *Nichols*, 809 F.3d at 987; *Mercer*, 527 F. App'x at 523 ("[The plaintiff] was moved because she had complained that her work environment was hostile and [her employer] did not wish to keep her in a potentially hostile work environment. This is certainly a legitimate justification for moving her.").

CRST's practice of removing the complaining driver from the truck also advances the safety of others on the road. It ensures that CRST employees are not attempting to operate trucks while they are simultaneously experiencing distress from the alleged harassment or working with Human Resoruces to describe their complaints. And because a substantial number of complaints come from student drivers, the removal practice also ensures safety by preventing student drivers who have not completed their training from operating trucks by themselves. *See* SUMF ¶ 8. At the same time, it promotes CRST's compliance with various licensing and truck ownership rules that govern its operations. *See, e.g.*, 49 C.F.R. § 391.11 (stating that motor vehicle carriers shall not allow unqualified persons to drive and that "a person is qualified to drive a motor vehicle if he/she . . . (3) [c]an, by reasons of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives").

Beyond its safety concerns, CRST also removes individuals who complain of harassment from the vehicle in order to complete a prompt and thorough investigation into the alleged harassment as quickly as possible. CRST's remedial practice serves those interests by separating the accuser from the accused, such that each can make a statement regarding the allegations

without the other present. It also gives the complainant the opportunity and resources to gather and transmit any additional information to HR as part of the investigation. *See* SUMF ¶ 40.

Indeed, if CRST failed to remove complainants from the harassing environment, CRST would face liability for that failure. An employer faces liability for sexual harassment when "the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999) (citing, *inter alia*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)); *see also Zirpel v. Toshiba Am. Info. Sys., Inc.*, 111 F.3d 80, 81 (8th Cir. 1997); *Callanan v. Runyun*, 75 F.3d 1293, 1296 (8th Cir. 1996). The Eighth Circuit has expressly held that the failure of a trucking company to remove an employee who complained of harassment from the truck creates "genuine issues of material fact" as to whether the trucking company "took appropriate remedial action in response" to the harassment complaint. *Nichols*, 809 F.3d at 987.

Although they call it retaliatory, Plaintiffs implicitly acknowledge CRST's obligations to undertake exactly the type of prompt remedial action that CRST actually takes. At the same time that Plaintiffs fault CRST for its practice of removing complainants from the harassing situation, Plaintiffs also chastise CRST for alleged instances in which the company's managers did not respond to complaints quickly enough by removing women who complained of harassment. That theory of liability recognizes that Title VII requires CRST to take prompt remedial measures in response to allegations of sexual harassment. *CRST Van Expedited, Inc.*, 679 F.3d at 693; *Nichols*, 809 F.3d at 987. CRST thus has multiple legitimate and non-retaliatory reasons for its remedial practice of removal.

### B. The Record Lacks Any Evidence Of Pretext.

The record does not support any genuine dispute regarding CRST's reasons for its removal practices. "If the employer articulates a legitimate reason for the adverse employment

action, the plaintiff may create a triable question as to retaliation by showing the employer's articulated reason was not the true reason for the adverse action." *Donathan*, 861 F.3d at 740. To succeed in that showing, the plaintiff "must both discredit [the employer's] asserted reasons for [the adverse employment action] and show that the circumstances permit drawing a reasonable inference that the real reason . . . was retaliation." *Hutton v. Maynard*, 812 F.3d 679, 684 (8th Cir. 2016). For the reasons set forth above, *see* Part II.A, *supra*, Plaintiffs cannot discredit CRST's asserted reasons for removing those who allege harassment from the allegedly harassing situation. Those reasons find uniform support in the fully developed record.

This case also lacks circumstances permitting an inference that retaliation motivated the practice at issue. Circumstances that permit such an inference include where the employer's proffered reason for the adverse employment action has shifted over time, *see Wierman v. Casey's General Stores*, 638 F.3d 984, 995 (8th Cir. 2011), or where similarly situated employees received more favorable treatment, *see Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014). Those are not the circumstances of this case. CRST has consistently articulated safety as the primary rationale for taking prompt remedial action, including in its written notice to all employees about the purpose of removing those who complain of harassment from the situation. CRST has also identified its need to conduct a prompt and thorough investigation, and its need to comply with licensing and truck ownership rules, as additional business reasons for its actions. Furthermore, the record does not contain any evidence of more favorable treatment for employees who complained for a reason other than sexual harassment, or who did not complain but required removal from the truck for another reason. To the contrary, the class members received *more* favorable treatment compared to employees who required

removal from a truck for another reason, because CRST covered lodging and transportation expenses for the class members and provided layover pay. *See supra* at 5-6.

While Plaintiffs apparently would prefer that the accused rather than the accuser be removed from the truck, unworkable alternatives to a company's existing business practices are not evidence of pretext. Indeed, Eighth Circuit precedent bars this Court from second-guessing legitimate business judgments unless they involve intentional discrimination. *See Arraleh*, 461 F.3d at 976 (collecting cases). Furthermore, arguments based on alternative policies are carefully circumscribed in the Title VII context. To take advantage of possible alternative policies in arguing for pretext, a plaintiff must demonstrate that the alternative policies are not only less retaliatory but also "equally" effective at achieving the company's legitimate business objectives. *Allen v. Entergy Corp.*, 181 F.3d 902, 906 (8th Cir. 1999); *see also Mercer*, 527 F. App'x at 523 (holding that an employer is not required to transfer the employee accused of harassment, rather than the employee complaining of harassment, especially where doing so "would not be practicable").[4]

Plaintiffs cannot make the required showing with respect to an alternative policy that the accused rather than the accuser should be removed from the truck.

---

[4] It is not enough for Plaintiffs to show that CRST has considered various approaches for responding to complaints of discrimination and harassment. Plaintiffs have suggested that an HR document discussing pros and cons of different approaches to separating drivers is clear evidence of acknowledged retaliation. ECF No. 157 at 3. Not so. This document instead underscores the thoughtful and deliberative way CRST considers its practices. Even after the Eighth Circuit upheld CRST's practices for responding to complaints alleging sexual harassment, CRST's HR personnel continued to discuss how the company might strengthen those practices. What is more, CRST's demonstrated concern for how its uniform and gender-neutral practices for responding to complaints affect all complaining employees makes absolutely clear that it was *not* CRST's intent to discriminate against complaining employees in general or any subset of them in particular.

- *First*, CRST needs to ensure the safety and well-being of the employee who allegedly experienced sexual harassment. That is far more difficult to accomplish if the complainant remains on the truck. For example, if the complainant continues driving, it may be more challenging to participate in the immediate investigation into the complaint, including by having a confidential conversation with the HR representative, and by gathering and submitting any corroborating evidence. *See* SUMF ¶¶ 40-41.

- *Second*, CRST must consider the overall safety of its operations. Multiple Plaintiffs have testified regarding the inherently dangerous and uniquely stressful aspects of professional truck driving. *See, e.g.*, *id.* ¶ 39. If a CRST driver has communicated a complaint of harassment that may result in distress to that driver, relieving that driver of the obligation to safely navigate the vehicle and deliver the load is the most appropriate response for the safety of all those concerned. It also enables the complaining driver to immediately seek any necessary resources, including medical attention, mental health care, and law enforcement assistance.

- *Third*, a substantial number of complaints alleging sexual harassment are lodged by student drivers against lead drivers, and CRST has a long-standing, uniformly applied policy that no student driver (due to experience level) can drive a truck solo until he or she completes training. *Id.* ¶ 42. Again, the purpose of that policy is the safety of the drivers, their freight, and others on the road. *Id.* ¶ 9. Because student drivers make a substantial number of the recorded complaints, a policy of removing the accused driver would operate in many circumstances to leave no qualified driver to drive the vehicle and deliver its load.

- *Fourth*, some complaints are lodged against owner-operators, who have ownership over the vehicle they operate with their CRST co-drivers. CRST has no authority to remove an owner-operator from a truck he or she owns. *Id.* ¶ 42.

- *Fifth*, an alternative policy would also require CRST to treat complaints alleging sexual harassment differently from other complaints CRST receives (e.g., complaints based on race, national origin, general personality conflicts, etc.). In all instances where one driver makes a complaint against another driver—regardless of the nature of the complaint—CRST instructs its driver managers to remove the complainant from the situation unless the complainant is the lead driver or the owner-operator. *Id.* ¶ 35. Title VII neither requires nor permits CRST to treat complaints alleging sexual harassment differently from all other complaints regarding unlawful employment actions.

In sum, "To survive a motion for summary judgment on a retaliation claim, [a plaintiff] must offer direct evidence of retaliation or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Donathan*, 861 F.3d at 739 (quoting *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016)). The Plaintiffs in this case have done neither. To find that CRST acted with retaliatory animus in undertaking prompt remedial action would turn Title VII on its head.

Plaintiffs have not identified, and CRST has not been able to locate, *any* similar case where plaintiffs bring class claims under Rule 23(b)(3) alleging that a company's standard remedial response to allegations of harassment is itself retaliatory (let alone any case that brings those allegations against a remedial response already upheld as legitimate by an appellate court twice). And there is good reason for that. Virtually every company has a policy to assist

individuals who complain of sexual harassment by removing them from the allegedly harassing situation and helping them transition to a more suitable working environment. During this transitional time, the complainant might experience some differential treatment. If this Court were to hold that it is retaliatory to take remedial measures in response to a complaint of harassment in which there is any risk that the complainant will be treated differently, Title VII's protections would be completely upended.

## **CONCLUSION**

For the reasons set forth above, CRST respectfully requests that the Court enter an order granting CRST's motion for summary judgment on Plaintiffs' classwide retaliation claim and then decertifying the Retaliation Class.

Dated: April 26, 2018

Respectfully submitted:

John H. Mathias Jr.*
James T. Malysiak*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
jmathias@jenner.com
jmalysiak@jenner.com
Telephone:   (312) 222-9350
Facsimile:   (312) 527-0484

Jessica Ring Amunson*
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
jamunson@jenner.com
Telephone:   (202) 639-6000
Facsimile:   (202) 639-6066

*Pro hac vice motion pending

SIMMONS PERRINE MOYER
BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
Telephone:   (319) 366-7641
Facsimile:   (319) 366-1917

By: /s/ Kevin J. Visser
Kevin J. Visser AT0008101
kvisser@simmonsperrine.com

Nicholas Petersen AT0012570
npetersen@simmonsperrine.com

*Counsel for Defendant*

27

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 26, 2018, I filed the foregoing with the Clerk of Court using

the ECF system, which will send notification of such filing to the following:

Tom Newkirk
515 E. Locust St., Suite 300
Des Moines, IA 50309
tnewkirk@newkirklaw.com

Giselle Schuetz
Rebecca Houlding
Joshua Friedman
FRIEDMAN & HOULDING, LLP
1050 Seven Oaks Ln.
Mamaroneck, NY 10543
giselle@joshuafriedmanesq.com
josh@joshuafriedmanesq.com
rebecca@joshuafriedmanesq.com

*Counsel for Plaintiffs*


/s/ Kevin J. Visser
KEVIN J. VISSER