UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

Case No. 1:15-cv-00117-LTS

CATHY SELLARS, CLAUDIA LOPEZ and
LESLIE FORTUNE, individually and on behalf
of all others similarly situated,

        Plaintiffs,

vs.

CRST EXPEDITED, INC.,

        Defendant.

# DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLASSWIDE RETALIATION CLAIM

Defendant CRST Expedited, Inc. ("Defendant" or "CRST"), by and through its undersigned counsel, and pursuant to Local Rule 56(a), respectfully submits the following Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment on Plaintiffs' Classwide Retaliation Claim:

**CRST's Business Model**

1. CRST is a leading long-haul freight transportation company with more than 3,300 drivers at any one time and the transportation industry's largest fleet of team drivers. *See* Defendant's Appendix in Support of its Motion for Partial Summary Judgment on Plaintiffs' Classwide Retaliation Claim ("D-App.") 1 (Declaration of Chad Brueck ¶ 3).

2. CRST operates by teaming together two drivers per truck so that one driver may sleep while the other is driving. D-App. 1-2 (Declaration of Chad Brueck ¶ 3).

3. This approach allows the truck to continue moving beyond the DOT Hours of Service daily limit per individual driver. *See* D-App. 1 (Declaration of Chad Brueck ¶ 3).

4. CRST's team drivers spend the vast majority of every day in a semi-tractor with a single coworker. D-App. 1 (Declaration of Chad Brueck ¶ 3).

5. The team drivers work and live in the tractor cab and often stay on the road for extended periods of time. D-App. 1-2 (Declaration of Chad Brueck ¶ 3).

6. CRST's drivers include individuals who own or are leasing to own the vehicles they operate, as opposed to driving a CRST truck. D-App. 8 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 65:15-18). These drivers are known as "owner-operators."

7. When drivers join CRST, the company requires them to undergo training by working alongside experienced drivers—known as "lead drivers"—for a designated period of time. D-App. 19 (Declaration of Laura Wolfe ¶ 9).

8. CRST policy prohibits student drivers from driving solo prior to the completion of their over-the-road training. D-App. 14 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 122:16-21).

9. The purpose of that policy is the safety of the drivers, their cargo, and others on the road. D-App. 19 (Declaration of Laura Wolfe ¶ 9).

10. Once student drivers complete their training, they may team with partners ("co-drivers") of their choosing. D-App. 19 (Declaration of Laura Wolfe ¶ 9); D-App. 2 (Declaration of Chad Brueck ¶ 5).

11. All driving teams are supervised by a driver manager based in Cedar Rapids, Iowa, the company's headquarters. D-App. 3 (Declaration of Chad Brueck ¶ 8).

12. Drivers communicate with driver managers (also known as "dispatchers" or "fleet managers") via phone, email, and CRST's messaging system, known as "Qualcomm." D-App. 3 (Declaration of Chad Brueck ¶ 8).

13. Driver managers are responsible for ensuring that loads are delivered on time and are evaluated on various metrics such as time percentage, overall mileage, and truck utilization. D-App. 3-4 (Declaration of Chad Brueck ¶ 9); D-App. 9 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 66:13-67:4).

14. Driver Managers are also responsible for driver retention and addressing conflicts between team drivers. D-App. 9 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 66:13-67:4).

**CRST's Policies on Driver Pay**

15. CRST's drivers are paid on a per-mile basis using a "split mileage system." D-App. 24 (Transcript of Rule 30(b)(6) Deposition of Cameron Holzer at 15:18-16:2).

16. Under this system, each driver is paid at his or her personal rate for half of the total miles driven by the truck (regardless of the number of miles the driver personally drives). D-App. 24 (Transcript of Rule 30(b)(6) Deposition of Cameron Holzer at 15:18-16:2).

17. The personal rate varies with the driver's length of experience. D-App. 24 (Transcript of Rule 30(b)(6) Deposition of Cameron Holzer at 16:9-13); D-App. 2-3 (Declaration of Chad Brueck ¶ 7); D-App. 27 (Exhibit 5 to Transcript of Rule 30(b)(6) Deposition of Cameron Holzer).

18. Although the split mileage system is the standard payment method at CRST, the company provides certain other compensation benefits in certain circumstances. D-App. 23 (Transcript of Rule 30(b)(6) Deposition of Cameron Holzer at 9:7-11).

19. A driver may receive "layover pay" if a truck is "available from empty time to dispatched pickup time" for certain specified lengths of time, and may receive compensation for periods away from the terminal or home due to breakdown or impassable highway conditions. D-App. 53 (Exhibit 7 to Transcript of Deposition of Cathy Sellars); D-App. 23, 25-26 (Transcript of Rule 30(b)(6) Deposition of Cameron Holzer at 9:7-11, 28:23-29:17).

20. Layover and breakdown compensation is calculated using daily rates, and those rates are standard regardless of the driver's length of experience. D-App. 26 (Transcript of Rule 30(b)(6) Deposition of Cameron Holzer at 31:3-22).

**CRST's Policies Against Sexual Harassment and Retaliation**

21. CRST has a written policy prohibiting sexual harassment in its workplace. D-App. 38 (Declaration of Angela Stastny ¶ 3); D-App. 29-31 (Excerpts from CRST's Driver Employee Handbook at 15-17).

22. The policy also bars other forms of unlawful employment discrimination and retaliation. D-App. 38 (Declaration of Angela Stastny ¶ 3); D-App. 29-31 (Excerpts from CRST's Driver Employee Handbook at 15-17).

23. CRST communicates this policy in the Handbooks and Statement of Policy that it distributes to drivers and home office employees, including driver managers. D-App. 38 (Declaration of Angela Stastny ¶ 4); D-App. 18 (Declaration of Laura Wolfe ¶ 5).

24. CRST also emphasizes this policy in a dedicated session at driver orientation, where qualified trainers present the policy and provide each driver with a stand-alone copy. D-App. 19 (Declaration of Laura Wolfe ¶¶ 6-7).

25. The policy states that CRST "prohibits sexual harassment"; provides that those who report it "will NOT be subject to ANY form of retaliation"; sets forth a complaint

procedure; and charges personnel with reporting responsibilities. D-App. 29-30 (Excerpts from CRST's Driver Employee Handbook at 15-16); D-App. 43-44 (Excerpts from CRST's Office Employee Handbook 18-19).

26. CRST also addresses sexual harassment in its Code of Business Ethics, which prohibits harassment based on sex and mandates immediate reporting "to the appropriate Supervisor or the Human Resources Department." D-App. 35-37 (Excerpts from CRST's Driver Employee Handbook 34-36).

27. The Handbook instructs that "[i]f an employee believes he or she is being subjected to verbal or physical harassment, the employee should immediately contact his or her Driver Manager or the Human Resources Department to inform them of the situation and to request a new lead driver." D-App. 40 (Excerpts from CRST's Office Employee Handbook 18).

28. The Handbook further provides that "[a]n employee has the right to request a new driver without fear of retaliation. Any employee who reports any act of harassment and/or discrimination will NOT be subject to ANY form of retaliation." D-App. 43 (Excerpts from CRST's Office Employee Handbook 18).

29. All drivers sign an acknowledgement that they have received and reviewed the CRST Driver's Handbook and Statement of Policy, including the policy on sexual harassment and retaliation. D-App. 18 (Declaration of Laura Wolfe ¶ 5).

30. Drivers must explicitly certify their understanding that employees who complain about harassment will be removed from the harassing situation. The acknowledgement states,

> I also understand and agree that if I believe I am being subjected to harassment or discrimination, no matter how severe or pervasive, I will immediately report it to my fleet manager or to the Human Resources Department directly so that I may be removed from the harassing situation and so that CRST may conduct a prompt investigation.

5

*See* D-App. 18 (Declaration of Laura Wolfe ¶ 5); *see also* D-App. 57 (Exhibit 34 to Transcript of Deposition of Claudia Lopez at 1); D-App. 66 (Exhibit 22 to Transcript of Deposition of Leslie Fortune at 4); D-App. 48 (Exhibit 3 to Transcript of Deposition of Cathy Sellars at 1).

**CRST's Policies and Practices for Responding to Complaints of Sexual Harassment**

31. When CRST receives a complaint of sexual harassment, its first priority is the safety of the complaining driver. D-App. 71 (HR Layover Pay Policy); D-App. 74, 76 (Transcript of Deposition of Angela Stastny at 53:11-22, 65:5-20); D-App. 11-12 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 105:23-106:10); D-App. 33 (Excerpts from CRST's Driver Employee Handbook at 19); D-App. 80 (Transcript of Deposition of Teresa Strong at 33:3-33:25).

32. When a dispatcher receives a call, Qualcomm message, or other communication from a driver who alleges sexual harassment, the dispatcher must take immediate steps to ensure the safety of the complainant and advance the investigation into the complaint. D-App. 40 (Declaration of Angela Stastny ¶ 12); D-App. 77-78 (Transcript of Deposition of Angela Stastny at 88:17-89:5); D-App. 13-14 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 121:20-122:2); D-App. 80 (Transcript of Deposition of Teresa Strong at 33:3-33:25).

33. CRST equips dispatchers to respond to complaints of sexual harassment—including authority to separate the employees, to arrange necessary accommodations for the complainant (including a hotel stay and transportation), and to pay or reimburse for those accommodations. D-App. 41 (Declaration of Angela Stastny ¶ 16); D-App. 71-72 (HR Layover Pay Policy); D-App. 77-78 (Transcript of Deposition of Angela Stastny at 88:17-89:5); D-App. 16 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 131:12-132:1); D-App. 84

(Transcript of 2018 Deposition of Karen Carlson at 10:1-20) ; D-App. 80 (Transcript of Deposition of Teresa Strong at 33:3-25).

34. CRST takes steps to separate the drivers quickly and safely. D-App. 40, 41 (Declaration of Angela Stastny ¶¶ 12, 16); D-App. 71-72 (HR Layover Pay Policy); D-App. 72-73 (Transcript of Deposition of Angela Stastny at 88:17-89:5); D-App. 16 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 131:12-132:1); D-App. 84 (Transcript of 2018 Deposition of Karen Carlson at 10:1-20); D-App. 86 (Transcript of Deposition of Cassie Burrill at 12:14-18); D-App. 80 (Transcript of Deposition of Teresa Strong at 33:3-33:25, 34:3-19).

35. In all instances where one driver makes a complaint against another driver—regardless of the nature of the complaint—CRST instructs its driver managers to remove the complainant from the situation unless the complainant is the lead driver or the owner-operator. D-App. 77-78 (Transcript of Deposition of Angela Stastny at 88:17-89:13); D-App. 14 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 122:12-123:3).

36. All employees receive notice of CRST's policy of removing the complaining employee when they join the company. *See* D-App. 57 (Exhibit 34 to Transcript of Deposition of Claudia Lopez at 1); D-App. 66 (Exhibit 22 to Transcript of Deposition of Leslie Fortune at 4); D-App. 48 (Exhibit 3 to Transcript of Deposition of Cathy Sellars at 1).

37. The primary reason for CRST's policy of removing the complainant from the allegedly harassing environment is the company's concern for safety. D-App. 71 (HR Layover Pay Policy); D-App. 76 (Transcript of Deposition of Angela Stastny at 65:5-14); D-App. 11-12 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 105:23-106:10).

38. The policy enables the complaining driver to immediately seek any necessary resources, including law enforcement assistance, medical attention, and mental health care. D-

App. 11-12, 16 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 105:23-106:10, 130:9-13).

39. It also relieves the complaining driver, who may be experiencing distress, from the inherently dangerous and uniquely stressful aspects of professional truck driving. *See, e.g.*, D-App. 56 (Transcript of Deposition of Claudia Lopez at 58:25-59:11); D-App. 65 (Transcript of Deposition of Leslie Fortune at 69:7-15).

40. The policy also gives the complainant the opportunity and resources to gather and transmit necessary information to HR as part of the investigation. D-App. 11-12, 14 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 102:13-103:21, 105:23-106:10, 123:1-3).

41. If the complainant continues working, it may be more challenging to participate in the immediate investigation into the complaint, including by having a confidential conversation with the Human Resources representative, and by gathering and submitting any corroborating evidence. D-App. 11-12, 14, 17 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 102:13-103:21, 105:23-106:10, 123:1-3, 136:11-137:3); *see also* D-App. 82 (Transcript of Deposition of Teresa Strong at 97:25-98:2: explaining it was "a safety issue" when an complainant refused to exit the truck and continued driving while simultaneously communicating with dispatch via Qualcomm regarding her complaint).

42. The policy also promotes CRST's compliance with various licensing and truck ownership rules that govern its operations—as in cases where the complainant is a student driver, and cannot operate the truck alone, or in cases where the accused is an owner-operator, meaning CRST has no authority to remove that individual. D-App. 14 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 122:12-22); D-App. 40 (Declaration of Angela Stastny ¶ 14); D-App. 81 (Transcript of Deposition of Teresa Strong at 94:17-21).

43. When CRST removes a complaining employee from an allegedly harassing environment, the company works with that employee not only to investigate the complaint, but also to locate a new co-driver for the employee's next job. D-App. 7, 11-12 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 35:2-36:3, 105:23-106:10); D-App. 71-72 (HR Layover Pay Policy).

44. On July 1, 2015, CRST promulgated a new Layover Pay Policy specific to individuals who lodge complaints of harassment or discrimination. D-App. 71-72 (HR Layover Pay Policy).

45. As that Policy states:

> CRST provides team drivers with multiple venues to report concerns related to harassment and discrimination. Upon a report of harassment or discrimination, CRST staff actively engages with each driver to ensure their safety. Normally, the driver making the complaint (Complainant/Accuser) is removed from the truck expeditiously and routed to a safe haven. The objective here is safety first. If the situation warrants, police will be called to ensure that no incidents transpire while the driver is packing up and exiting the truck. CRST exemplifies a culture that is fair and consistent with regard to pay and lodging to employees who report Title VII concerns. A team driver will not be penalized, financially, for reporting a bonafide concern. In addition, CRST enforces zero tolerance for retaliation.

D-App. 71-72 (HR Layover Pay Policy).

46. The Policy further provides that when a complaint of harassment or discrimination is made, the dispatcher will "make arrangements to remove the Accuser from the truck" unless the removal of the accuser from the truck means that there will not be any qualified driver for the truck. D-App. 71 (HR Layover Pay Policy).

47. CRST ensures that the driver removed from the truck has sufficient funds for lodging and transportation costs (which the driver does not have to pay back), and CRST immediately commences an investigation. D-App. 71-72 (HR Layover Pay Policy); D-App. 87 (Transcript of Deposition of Cassie Burrill at 13:1-8).

48. CRST pays the driver removed from the truck HR layover pay, starting on the date that the employee was removed from the truck, and ending on the date that the employee pairs with a new co-driver. D-App. 71-72 (HR Layover Pay Policy); D-App. 75 (Transcript of Deposition of Angela Stastny at 62:14-22).

49. CRST calculates the amount of HR layover pay based on the highest minimum wage in the country, which CRST multiples by ten hours per day. CRST paid $100 per day when it originally implemented HR layover pay. Based on increases in California's minimum wage (which is the highest in the country), CRST now pays $110 per day in HR layover pay. *See* D-App. 6-7 (Transcript of Rule 30(b)(6) Deposition of Karen Carlson at 33:25-34:2); D-App. 76 (Transcript of Deposition of Angela Stastny at 66:6-67:3).

50. Prior to July 2015, where there was a delay in the pairing and continuation of driving which exceeded 48 hours, a driver complaining of harassment was eligible to receive the standard layover pay of $40 per day. D-App. 41 (Declaration of Angela Stastny ¶ 16).

| | |
|---|---|
| Dated: April 26, 2018 | Respectfully submitted: |
| John H. Mathias Jr.*<br>James T. Malysiak*<br>JENNER & BLOCK LLP<br>353 N. Clark Street<br>Chicago, IL 60654<br>jmathias@jenner.com<br>jmalysiak@jenner.com<br>Telephone: (312) 222-9350<br>Facsimile: (312) 527-0484<br><br>Jessica Ring Amunson*<br>JENNER & BLOCK LLP<br>1099 New York Avenue, NW, Suite 900<br>Washington, DC 20001-4412<br>jamunson@jenner.com<br>Telephone: (202) 639-6000<br>Facsimile: (202) 639-6066 | SIMMONS PERRINE MOYER<br>BERGMAN PLC<br>115 Third Street SE, Suite 1200<br>Cedar Rapids, IA 52401-1266<br>Telephone: (319) 366-7641<br>Facsimile: (319) 366-1917<br><br>By: /s/ Kevin J. Visser<br>Kevin J. Visser AT0008101<br>kvisser@simmonsperrine.com<br><br>Nicholas Petersen AT0012570<br>npetersen@simmonsperrine.com<br><br>*Counsel for Defendant* |

*Pro hac vice* motion pending

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2018, I filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the following:

Tom Newkirk
515 E. Locust St., Suite 300
Des Moines, IA 50309
tnewkirk@newkirklaw.com

Giselle Schuetz
Rebecca Houlding
Joshua Friedman
FRIEDMAN & HOULDING, LLP
1050 Seven Oaks Ln.
Mamaroneck, NY 10543
giselle@joshuafriedmanesq.com
josh@joshuafriedmanesq.com
rebecca@joshuafriedmanesq.com

*Counsel for Plaintiffs*

/s/ Kevin J. Visser
KEVIN J. VISSER