# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

CATHY SELLARS, CLAUDIA LOPEZ
and LESLIE FORTUNE, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

vs.

CRST EXPEDITED, INC.,

        Defendant.

Case No.   15-CV-0117-LTS

**ORDER**

---

Pending before the court are two motions filed by the Nation Institute and REAL Women in Trucking (collectively, the Interveners):    a motion to intervene for the limited purpose of unsealing court records (Doc. 126) and a motion to unseal briefing and exhibits filed in connection with the motion for class certification (Doc. 127).    Defendant CRST Expedited, Inc. (CRST) resists[1] both motions (Doc. 138); Plaintiffs consent to both motions.    The Interveners also filed a motion to supplement their motion to unseal (Doc. 176).    In the supplemental motion, the Interveners ask the court to unseal Volume II of CRST's appendix submitted in support of its decertification motion (Doc. 173) and to require the parties in future pleadings to specifically address information they believe should be sealed.    Doc. 176.    CRST filed a supplemental response (Doc. 178) in which it resists the substantive relief requested by the supplemental motion to unseal (Doc. 176), requests leave to file redacted versions of the class certification briefs (Docs. 35-1, 55, 65) to withhold personal or proprietary information, and seeks denial of the motion to

---

[1] Although CRST agrees to unseal the briefs (subject to certain redactions), it resists unsealing the exhibits filed in support of the briefs.    Thus, the motion is not moot (as CRST cursorily suggests).

intervene (Doc. 126) and motions to unseal (Doc. 127, 176).  I **grant** the motion to intervene (Doc. 126) and **grant in part and deny in part** the motion to unseal (Doc. 127) and the supplemental motion to unseal (Doc. 176).

## I.    PROCEDURAL BACKGROUND

Cathy Sellars, Claudia Lopez, and Leslie Fortune—the three named plaintiffs—initiated this lawsuit in October 2015 by filing a 66-page, 324-paragraph complaint against their former employer, CRST.  Doc. 2.  They had worked as cross-country truck drivers for CRST in a team system with a co-driver (usually male) where their compensation was based on the number of miles driven.  They brought claims under Title VII, alleging that CRST's unwritten sexual-harassment policies subjected them to a hostile work environment based on sex and to retaliation for complaining of sexual harassment.  They alleged CRST's discriminatory sexual-harassment policies included (1) requiring third-party eyewitness corroboration or an admission by the accused to impose any disciplinary measures; (2) failing to impose discipline even when a sexual-harassment complaint was admitted or corroborated; (3) failing to discipline managers that violated official CRST policies in handling sexual-harassment complaints; and (4) requiring women who made sexual-harassment complaints against their co-driver to exit the truck (and thereby forgo payment for miles they otherwise would have driven).  In March 2017, the court certified a class (in a 56-page order) of about a hundred women who had been subjected to these policies from October 2013 to the present.  Doc. 85.  The Eighth Circuit denied CRST's request for an interlocutory appeal a few months later.  Doc. 94; *see* Docket, No. 17-8010 (8th Cir.).  Neither the complaint, the class-certification order, nor the briefs filed in the Eighth Circuit are sealed, but the briefs and exhibits related to the class-certification motion are sealed.

As the case progressed, the parties filed a number of motions to compel and exhibits in support thereof, many of which are not sealed.  The discovery deadline and

2

expert-witness disclosure deadline have passed, and CRST's motion to decertify the class and motion for partial summary judgment are both pending (although Plaintiffs' responses are not due until July 28, 2018). Docs. 120, 153, 171, 172, 177. The trial ready deadline is in October 2018. Doc. 153.

The Interveners move to intervene for the limited purpose of unsealing the class-certification briefing and exhibits and exhibits for CRST's decertification motion. The Nation Institute, one of the Interveners, is a nonprofit that produces investigative reporting that may appear in any number of print, online, or broadcast mediums. Doc. 126-1. In particular, recently, the Nation Institute has been investigating "sexual harassment in the trucking industry," and it has published at least two articles (in July and November 2016) about this lawsuit on its online blog (as well as an article about the pending motion to unseal). *See id.*; Doc. 138. It seeks access to the sealed documents to discover evidence of "patterns of alleged harassment among female drivers . . . , the kinds of recourse drivers subject to harassment may have access to, and records of [CRST's] accountability structures and how fully they are used." Doc. 126-1. The other Intervener, REAL Women in Trucking, is "a nonprofit trade association for women in the trucking industry." Doc. 126-2. It provides information to women looking to enter the industry about "the benefits and drawbacks of working as a truck driver" and advice about "what to look for in a training program and an employer." *Id.* It also works to "educat[e] drivers" about sexual harassment in the trucking industry, to "help[] women to avoid harassment," and to "provid[e] assistance to women who face harassment," including through sponsoring "lawyer-directed know-your-rights information sessions . . . at trucking conventions" and responding to emails from those seeking advice. *Id.* It seeks to access the sealed documents to better inform truck drivers (and those thinking of becoming truck drivers) and the general public about this lawsuit. *Id.*

## II.    MOTION TO INTERVENE

Federal Rule of Civil Procedure 24(b) governs permissive intervention in a pending lawsuit.    As both CRST and the Interveners recognize, the Eighth Circuit has held that "Rule 24(b) intervention [is] an appropriate procedural vehicle for parties seeking to intervene for the purpose of obtaining judicial records."    *Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015) (per curiam).    Nevertheless, CRST argues that the motion to intervene should be denied as untimely.    CRST argues both that the motion is too early (and that it should instead be filed after the close of this case when the parties are no longer dealing with briefing on other issues and trial preparation) and that it is too late (as the sealed certification documents at issue were filed in August and September 2016 and ruled on in March 2017, but the current intervention motion was not filed until January 2018).

CRST relies on *Flynt* as support that the motion to intervene should be filed after this case is resolved, as that case recognized a motion to intervene for purposes of unsealing records may be filed "after the underlying dispute between the parties has long been settled."    *Id*. at 966 n.2 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3rd Cir. 1994)).    In *Flynt*, one of the cases "had already been dismissed by the district court" at the time of the motion to intervene and one of the cases "remained ongoing."    *Id*. at 965-66.    The court held that neither intervention was untimely.    *Id*. at 966-67.

To support its argument that the motion to intervene should have been filed earlier in the proceedings, CRST cites *Doe v. United States*, 44 F. App'x 499 (Fed. Cir. 2002) (per curiam).    In that case, plaintiffs in an opt-in class action were proceeding anonymously, and an interested party proceeding pro se sought to intervene to make class members' names public.    *Id*. at 500-01.    His motion was filed about three years after the filing of the complaint, two years after the class-certification order, eighteen months after the close of discovery, and ten months after the completion of summary-judgment

4

briefing. *Id.* at 500-01. The court found no abuse of discretion in the district court's decision to deny the motion to intervene as untimely. *Id.* at 501-02. The court noted that his motion to intervene might not be limited to unsealing records: "it [wa]s not entirely clear what the purpose or intent of [the] motion to intervene might be," and although he did not "seek[] to enter as a party," he represented that he wanted to "serve as a check upon the judicial process." *Id.* at 501-02. The court also noted that "[t]he parties have [already] litigated the right of plaintiff class members to proceed anonymously" and that allowing intervention to make their names public would "create[] substantial prejudice to the existing parties in this case." *Id.* at 500, 502. The court in *Doe* seemed to rely on the merits (or lack thereof) of the would-be intervener's request to unseal, but the Eighth Circuit has held that "[t]he question of whether a party is allowed to intervene is distinct from the issue of whether the party's motion to unseal should be granted." *Flynt*, 782 F.3d at 967 n.3. *Doe* is further distinguishable because it was not clear that the interested party sought to intervene for a limited purpose and because the parties had already litigated the right to proceed anonymously.[2]

I am persuaded by the cases cited by the Interveners that the motion to intervene is not untimely. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 303-04, 307 (6th Cir. 2016) (rejecting argument that class members' motion to intervene to unseal court records was untimely when it was filed after a potential settlement was reached, and class members sought to unseal pending motions and exhibits filed about a year previously to evaluate the fairness of the settlement); *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3870069, at *2 (E.D. Tex. Apr. 18, 2016) (finding motion to intervene for purposes of unsealing documents was timely

_____

[2] CRST also relies on *In re Wholesale Grocery Product Antitrust Litigation*, 849 F.3d 761, 768 (8th Cir. 2017), and *ACLU of Minnesota v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1094 (8th Cir. 2011), but those cases did not involve intervention for the limited purpose of unsealing records.

5

despite intervener "ha[ving] known about the" case "for at least a year and a half" because the case "had a complex history, including a four[-]month period of inactivity while the parties attempted settlement"); *FTC v. AMG Servs., Inc.*, No. 2:12-CV-536-GMN-VCF, 2014 WL 6069821, at *4 (D. Nev. Nov. 13, 2014) ("When a member of the public moves to intervene to unseal judicial records, the motion to intervene is timely as long as the documents remain under seal because sealing places the public's interest in open access in controversy."), *aff'd*, 2015 WL 4073192 (D. Nev. July 2, 2015); *Kamakana v. City & Cnty. of Honolulu*, No. 00-CV-729, 2002 WL 32255355, at *1-2 (D. Haw. Nov. 25, 2002) (finding a motion to intervene for purposes of modifying a protective order entered four months earlier was timely), *aff'd*, 447 F.3d 1172 (9th Cir. 2006); *Republic of Phillipines v. Westinghouse Elec. Corp.*, 139 F.R.D. 50, 55-56 (D.N.J. 1991) (holding that a motion to intervene for the purposes of modifying a protective order entered almost two years previously was timely, despite being filed "a short time before trial").   Neither do I believe that granting the motion to intervene will prejudice CRST, as they have already completed the briefing on the motion to unseal, and I will give CRST a sufficient period of time to complete any redactions ordered (which a paralegal should be able to complete).   The motion to intervene (Doc. 126) is **granted**.

### III.   MOTION TO UNSEAL

The parties stipulated to a protective order in this case that provided, in relevant part:

> [T]his action may involve discovery of documents and testimony containing highly confidential information, all of which, if disclosed to persons other than those specified herein, would pose a significant risk of injury to the respective party or third-person, and/or a significant risk to the legitimate business interests of Defendant.   Thus, the following documents may be designated as "Confidential" by the producing party:   information related to (a) trade secrets, intellectual property, or other confidential research,

6

development, or commercial information, including financial and revenue information; (b) financial, marketing and other proprietary information of the Parties; (c) medical records; and (d) confidential employee records, files, and information including, but not limited to, internal investigative files and disciplinary records relating to or arising out of allegations of harassment, discrimination or retaliation. . . . Should a party wish to submit Confidential Information designated by the other party to the Court for any reason other than at trial, such Confidential Information shall be filed electronically under seal . . . unless otherwise agreed in writing . . . . A party may submit its own designated Confidential Information to the Court without such agreement.

Doc. 14. The court granted the parties' unresisted motions to file the motion for class certification and related briefing and exhibits under seal, as they "cite[d] to, summarize[d], and contain[ed] excerpts of" documents marked confidential under the protective order. Docs. 32, 33, 53, 54, 62. The Interveners now move to unseal the motion, briefs, and exhibits related to class certification. They argue that victims' names should be redacted, but that all other names (including names of CRST employees and alleged harassers) should not be redacted. Plaintiffs do not resist the motion to unseal; CRST agrees to "publicly file versions of the class certification briefs with redactions of the personal or proprietary information therein," but resists unsealing any exhibits. Doc. 138 at 2 (citation omitted).

The Supreme Court has recognized that "[t]here is a common-law right of access to judicial records," which the circuit courts, including the Eighth Circuit, have held "applies to judicial records in civil proceedings." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).[3] This "right is not absolute": "[t]he presumption of public access to judicial

---

[3] CRST offers no argument to support that the records at issue are not judicial records (indeed, it is unclear if CRST disputes this proposition). *See* Doc. 138 at 17, 20-21. The Eighth Circuit has recognized that the "modern trend" is "to treat pleadings in civil litigation (other than discovery motions and accompanying exhibits) as presumptively public, even when the case is pending before judgment." *IDT Corp.*, 709 F.3d at 1223; *see, e.g.*, *Kamakana*, 447 F.3d at 1179-80 (holding that nondispositive discovery motions are not judicial records because such

records may be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018). In determining whether judicial records should be unsealed, the court must balance the "interests served by the common-law right of access . . . against the salutary interests served by maintaining confidentiality of the [sealed] information." *IDT Corp.*, 709 F.3d at 1223. Factors the Eighth Circuit has considered in employing this balancing test include "the role of the material at issue in the exercise of Article III judicial power"

motions—unlike the class-certification motion at issue here—"are often 'unrelated, or only tangentially related, to the underlying cause of action'" (quoting *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003))); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) ("[T]here is a presumptive right of public access to pretrial motions of a non-discovery nature, whether preliminary or dispositive, and the material filed in connection therewith."). Even if I found CRST had not forfeited a judicial-records argument, I would find that the motion for class certification and related briefs and exhibits are judicial records. *See Baker v. SeaWorld Entm't, Inc.,* No. 14CV2129-MMA (AGS), 2017 WL 5029612, at *2-4 (S.D. Cal. Nov. 3, 2017) (collecting cases and holding that briefs and exhibits related to motion for class certification were judicial records); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.,* No. 14-CV-4394 (AJN), 2017 WL 1331288, at *11 (S.D.N.Y. Apr. 4, 2017) (same); *Kingery v. Quicken Loans, Inc.*, No. 2:12-CV-01353, 2014 WL 1794863, at *1 (S.D. W. Va. May 6, 2014) ("[C]lass certification documents are judicial records subject to the common law right of access." (alteration in original) (quoting *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 728 (M.D.N.C. 2013))); *Cochran*, 931 F. Supp. 2d at 728 (holding that because class certification "'has important consequences for the unnamed members of the class'" and "'adjudicat[es] . . . one of the issues litigated,'" class certification "briefs and exhibits . . . are judicial records" (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980); *Sosna v. Iowa*, 419 U.S. 393, 399 n.8 (1975))); *see also Shane Grp.*, 825 F.3d at 306-07 (treating motion for class certification and supporting exhibits as judicial records after noting that the motion for class certification is "arguably the most important filing in any putative class action"); *McQuilliams v. Int'l Auto Logistics, LLC*, No. 2:14-CV-124, 2016 WL 4257362, at *1 (S.D. Ga. Aug. 11, 2016) (treating motion for class certification and supporting exhibits as judicial records). I note that in *Krueger v. Ameriprise Financial, Inc.*, the court held that documents "submitted in connection with plaintiffs' class certification motion" but that "played no role whatsoever in the [court's] decision to grant certification" did not constitute judicial records (essentially, it seems that the court found exhibits not cited in the district court's order not to be judicial records). No. 11-2781 (SRN/JSM), 2014 WL 12597948, at *5, *9-11, *13-15 (D. Minn. Oct. 14, 2014), *aff'd*, 2015 WL 224705 (D. Minn. Jan. 15, 2015). As the Second Circuit has reasoned, this cannot be the rule, as it would make "any attempt at calling something a judicial document . . . premature" until a district court issues its order. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006).

8

and whether it "directly affect[ed] an adjudication," *id.*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)); whether "substantial access to the information . . . ha[s] already been afforded"; whether the records will be used to "'further[] . . . commercial plans[,] . . . . gratify private spite[,] or promote public scandal'"; whether public access "could harm . . . the availability of material" evidence in future trials, *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996) (quoting *Nixon,* 435 U.S. at 602-03); whether the records contain "business information that might harm a litigant's competitive standing, *Nixon*, 435 U.S. at 598; whether access could affect the fairness of a pending trial due to media coverage; and "administrative difficulties in providing access" to the records, *United States v. Webbe*, 791 F.2d 103, 106-07 (8th Cir. 1986). *See also Scott v. City of Sioux City, Iowa*, 96 F. Supp. 3d 898, 906-08 (N.D. Iowa 2015) (applying similar factors from *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)).  If the court finds the right of public access is outweighed, the court must also consider whether portions of the records are "amenable to public access without jeopardizing . . . confidentiality," or whether "[o]n the other hand, confidential information [is] so embedded in a pleading that line-by-line redaction is impossible, or redaction [is] insufficient to protect the interests that justify sealing." *IDT Corp.*, 709 F.3d at 1224.  The Eighth Circuit has upheld (under abuse-of-discretion review) that the state's interest in carrying out executions and preserving the "personal and professional safety" of those involved in executions outweighed the right of public access to licensing information that would reveal the identity of members of a state execution team, *Flynt*, 885 F.3d at 511-12; that a minor's privacy interests outweighed the right of public access to filings in a case involving a disabled fourteen-year-old who brought a loaded gun to school, *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1373, 1376-77 (8th Cir. 1990); that companies' interests in keeping confidential their research and trade secrets contained in an antitrust complaint outweighed the right of public access to an unredacted complaint, which was "minimal"

9

because the parties quickly entered into a settlement agreement, and "[t]he court never adjudicated any aspect of the claims on the merits," *IDT Corp.*, 709 F.3d at 1221-24; and that the right of public access outweighed a plaintiff's request to redact her name from all filings in an employment-discrimination case seven years after the case had settled when the plaintiff believed her past lawsuit was harming her employment prospects, *Duckworth v. St. Louis Metro. Police Dep't*, 654 F. App'x 249, 249-50 (8th Cir. 2016) (per curiam).

CRST relies on *Scott*, a case that also involved "claims of retaliation for complaining about or opposing sexual harassment." 96 F. Supp. 3d at 911. In *Scott*, a court in this district noted that it had previously issued an evidentiary ruling addressing whether the probative value of certain evidence outweighed its potential for unfair prejudice, which it had sealed "to avoid exposure of potential jurors to information about challenged evidence and to avoid disclosure of private information subject to a protective order." 96 F. Supp. 3d at 901, 909. After the case settled, the defendant city sought to keep the order under seal. *Id.* at 901. The court found its order strongly implicated the right of public access because it addressed "the scope of the plaintiff's claims and the scope of the issues that she would be able to assert." *Id.* at 909. The court noted that "many of the 'confidential' or 'private' matters" discussed in the order had previously been disclosed in the complaint and order on summary judgment, neither of which were sealed. *Id.* at 910. The court held that harm to reputation or embarrassment over sexual misconduct were insufficient reasons to keep the order sealed (and distinguished cases involving minors). *See id.* at 910-11. The court further noted that the persons involved in misconduct were public employees "who might reasonably expect a higher degree of public scrutiny." *Id.* at 910. The court concluded "that the balance of interests weighs heavily in favor of unsealing the [e]videntiary [r]uling," but it redacted "the names of City officials or employees and other persons, other than the plaintiff or a named

10

defendant, who allegedly engaged in sexual misconduct or extramarital affairs or who [we]re alleged to be victims of sexual harassment." *Id.* at 911.

Also relevant is *Moussouris v. Microsoft Corp.*, another case involving claims of gender-based employment discrimination. No. 15-CV-1483 JLR, 2018 WL 1159251, at *2 (W.D. Wash. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1157997 (W.D. Wash. Mar. 1, 2018). Although *Moussouri* did not involve third-party interveners, the court applied the *Nixon* balancing test to determine whether exhibits filed in connection with the plaintiff employees' motion for class certification should be sealed (as the defendant employer argued). *Id.* at *2-5. The court held that "names of non-parties and any other identifying information" (most of whom were victims of harassment) "should be redacted" due to privacy interests. *Id.* at *6. Even with this redaction, the defendant employer argued that a human resources (HR) chart "reveal[ing] the number of internal complaints lodged by employees and the number of times that [the employer] found a company policy violation" should be sealed because it was the product of confidential investigations and could deter employees from participating in the investigatory process in the future. *Id.* at *6-7. The court held that these concerns were too remote and speculative to justify sealing the chart in its entirety. *Id.* at *7. The court found, however, that "a description of the employee's difficult period" in another exhibit could "reveal the identity of the employee," so that information should be sealed. *Id.* at *7. The court also found that nonparty compensation information should be sealed to protect third-party privacy interests and the company's business strategies. *Id.* at *8, *11. Finally, the court found that the company's diversity initiatives and strategies were trade secrets that should be sealed, although it did not find that the diversity data itself should be sealed. *Id.* at *11-12.

Here, CRST primarily argues that the records should not be unsealed until the case is concluded (relying on *Scott*), suggesting in broad terms unsupported by any specifics that its claims should be tried by a jury and not in the press. *See* Doc. 138 at 17-18, 20-

21, 25.  *Scott* did not involve a request to unseal records before trial, and the court did not address the timing issue currently before the court.   Although a few blog posts have been written about this case, it "has not been subject to such intense media scrutiny or public attention that the [c]ourt should assume that subsequent publication of the [records] would inevitably prejudice the public against Defendant[]."  *Rohrbough v. Hall*, No. 4:07CV00996 ERW, 2010 WL 1998554, at *2 (E.D. Mo. May 19, 2010).   CRST's concern of prejudice is "conjectural" or "hypothetical," not "actual" (as required).  *Id.* (quoting *Webbe,* 791 F.2d at 107 n. 4; *United States v. Criden,* 648 F.2d 814, 827 (3d Cir. 1981)).

CRST also argues that the relevance of the records related to class certification (and whether they "directly affected the adjudication") will be undercut if the court grants the pending motion for decertification of the class.   If anything, this fact weighs in favor of unsealing the records—allowing access to the briefing and documents filed in support of the motion for class certification would better allow the public to evaluate the likelihood that the class will be decertified.   Moreover, if the motion for decertification is granted, comparing the exhibits filed in support of the motion for class certification with the decertification exhibits could help explain the court's exercise of judicial power.

The Interveners' interest in unsealing the briefs is particularly strong.   CRST agrees that the briefs should be unsealed but argues that "personal or proprietary information therein" should be redacted.   Doc. 138 at 2.   CRST does not specifically outline what information in the briefs it believes is personal or proprietary.   From my review, almost all of the potential "proprietary" information—e.g., general statistics on sexual harassment from CRST's HR department, CRST's training and payment policies— is discussed in either the complaint or the court's order on class certification (albeit perhaps in more general terms, especially with regard to CRST's HR layover pay policy). The complaint and the court's class-certification order also include descriptions of many of the examples of sexual harassment contained in the briefs, although the Plaintiffs' reply

12

brief summarizes quite a few additional allegations. The briefs also include names of alleged victims and harassers that appear nowhere else in the record. I find that the confidentiality interests at stake can be adequately preserved by redacting the names of victims and perpetrators (drivers and driver managers, but not HR employees or high-level executives) and that the Interveners' right to access otherwise outweighs the interests served by keeping the briefs under seal. *See Moussouris*, 2018 WL 1159251, at *6-12; *Scott*, 96 F. Supp. 3d at 911; *see also Rohrbough*, 2010 WL 1998554, at *1, *3 (sealing the names of nonparty police officers contained in a trial exhibit because the identities of individual officers accused of using excessive force was irrelevant to the issue whether the board of commissioners was deliberately indifferent to the officers' use of force). None of the cases cited by the Interveners support their argument that the names of nonparties accused of sexual harassment should be unsealed (Doc. 148 at 23 n.18). *See Smith v. Westminster Mgmt., LLC*, No. JKB-17-3282, 2018 WL 572867, at *1-2, *6, *8 (D. Md. Jan. 26, 2018) (unsealing the names of the members of a defendant limited liability company (LLC) contained in a notice of removal because "under the law," LLC members "comprise the parties in the case"); *United States v. Simpson*, No. 3:09-CR-249-D(06), 2010 WL 4282173, at *1-3, *5 (N.D. Tex. Oct. 28, 2010) (unsealing an affidavit filed in support of a forfeiture restraining order in a criminal case and rejecting the government's request to redact the names of two witnesses, two victims, and ten others engaged in fraud because half of the names had already been disclosed publicly and some of the names were "pseudonyms or borrowed identities"); *United States v. Gonzalez*, 927 F. Supp. 768, 777-78 (D. Del. 1996) (recognizing "the notion that the reputations of persons against whom allegations have been made should be preserved until such time as the allegations can be corroborated or verified," but finding this principle was not implicated by unsealing names contained in an exhibit discussing a third-party scientist's "poor work habits or lack of scientific ability" because the substance of the allegations and the scientist's name had already been publicly

13

disseminated and only "specifics of the allegations" and witnesses' names were unknown); *see also Pugliano v. Grace Holmes, Inc.*, No. 2:11-CV-O1562, 2012 WL 1866380, at *1-2 (W.D. Pa. May 22, 2012) (denying Title VII plaintiff's motion to seal records and specifically noting that there were no "allegations regarding the conduct or interests of third parties" or "of sexual assault or abuse").

CRST makes no effort to address the competing interests at stake for each individual exhibit, instead making arguments in broad terms that purportedly apply to all the exhibits. One of CRST's arguments is that the judicial records at issue contain information that has not yet been made public. Although this is true of some exhibits, CRST fails to acknowledge that many of the exhibits have been filed elsewhere on the docket (not under seal) or otherwise contain information readily available from the complaint, from unsealed exhibits supporting the various motions to compel, or from the court's order on class certification. For example, several exhibits contain excerpts (sealed) from Karen Carlson's deposition (Docs. 35-3, 55-1, 65-7), but her deposition has been filed in its entirety (unsealed) with only a few redactions in connection with a motion to compel (Doc. 60). *See also* Docs. 35-17, 55-1, 56 (excerpts from Dave Mara deposition sealed despite being publicly available on the docket in its entirety); Docs. 30, 35-4 (transcript of motion to compel hearing sealed despite being publicly available on the docket). Another exhibit discusses the requirements to be a lead driver for CRST and discloses nothing that cannot already be discerned from the complaint, class certification order, and unsealed version of Karen Carlson's deposition. Docs. 2, 35-18, 60, 85. Moreover, exhibits such as the declarations submitted by Plaintiffs are not subject to the protective order, as CRST did not produce these exhibits during discovery, and Plaintiffs do not seek to keep any records sealed (the declarations also largely contain information already available in the complaint or class certification order). *See* Docs. 2, 35-5 to 35-11, 85. CRST has no confidentiality interest in information that is already publicly available.

CRST argues that exhibits compiled by its HR department in the course of an investigation of sexual-harassment allegations should remain confidential. CRST points to testimony from Karen Carlson that during the initial interview with an alleged victim, HR "let[s] them know that [CRST] treat[s] this with as much confidentiality as possible, but [CRST] can't guarantee . . . that their name won't be disclosed as [CRST] investigate[s] the matter further." Doc. 60 at 29. Many of the HR investigation forms also note to remind the person being interviewed "of confidentiality." CRST suggests that unsealing these exhibits could chill employees' candor in future investigations. I am not convinced by CRST's broad assertions that any information need be redacted from the briefs (other than names, as already discussed). I find, however, that the Interveners' interest in additional details of the underlying sexual harassment (contained in the exhibits but not the briefs) is relatively weak, as CRST argues, because the claims in this case revolve around how CRST handled sexual-harassment complaints once they were made (requiring women to leave the truck, requiring corroboration, not disciplining harassers or unresponsive managers), and not the sexual harassment itself. Details of the underlying harassment could also reveal identifying information about the victims or harassers. Balancing the interests at stake, I find that the details of previously undisclosed sexual harassment gathered by CRST's HR department during the course of their investigation should remain confidential, but that the investigation outcome and action taken should be unsealed. I also find that a vast majority of the positive work environment (PWE) charts complied by HR should remain sealed and that the remaining information is generally available through the records being unsealed.

In sum, I find that:

- The motion for class certification and related briefs should be unsealed in their entirety (Docs. 35, 35-1, 55, 65), except that the names of previously undisclosed nonparty victims, harassers, and managers should be redacted. Such names should also be redacted from any exhibits that I order unsealed (as noted below).

15

Rather than combing through the more than 178 docket entries in this case to determine which names have already been publicly disclosed, the parties may redact all such nonparty names.

- Documents containing information that has already been made public or that was produced by Plaintiffs should be unsealed in their entirety, except previously undisclosed names and personal identifying information such as dates of birth or personal phone numbers and email addresses (*see* LR 10(g)) should be redacted.

- Documents containing previously undisclosed details of underlying harassment, personnel records, or proprietary information should be redacted if possible and remain sealed if not (and as with the other evidence, previously undisclosed names and personal identifying information should also be redacted). I do not find that the investigative forms related to the named plaintiffs and declarants need be redacted, however (other than previously undisclosed names and identifiers). I also find that HR investigation outcomes and actions taken need not remain sealed.

With this framework in mind, the documents filed under seal shall be handled as follows:

**Documents to be unsealed, except names and other identifiers should be redacted:**

- Doc. 35-2 (one-page excerpt from the CRST employee handbook discussing the services offered)
- Doc. 35-4 (excerpt of transcript from motion to compel hearing)
- Docs. 35-5 to 35-12 (declarations submitted by Plaintiffs)
- Doc. 35-17 (excerpts of transcript from Dave Mara deposition)
- Doc. 35-18 (one-page sheet outlining eligibility requirements to be a lead driver, the lead driver selection process, and the training program)
- Doc. 35-20 (email from Karen Carlson discussing her ideas for the Rock the Rules competition)

16

- Docs. 35-21 (HR investigation form related to declarant Veronica Saur's complaint)

- Docs. 35-22 to 35-26 (HR investigation forms and evidence related to Sellars' complaint)

- Docs. 35-29 to 35-30, 35-32 (HR email threads and investigation forms regarding sexual-harassment allegations and HR investigations discussed in class-certification order)

- Doc. 55-1 at 4-15 (declarations of Chad Brueck, Laura Wolfe, and Angela Stasney)

- Doc. 55-1 at 16-17 (advertisement in *Team Drivers & Women in Trucking Magazine*)

- Doc. 55-1 at 18-31 (excerpts from CRST's Driver Handbook (current and prior version))

- Doc. 55-1 at 32-39 (excerpts from CRST's Office Employee Handbook)

- Doc. 55-1 at 71 (photographs of posters at CRST company locations)

- Doc. 55-1 at 72-76 (excerpts from transcript of deposition of Dave Mara)

- Doc. 55-1 at 77-81, Doc. 55-2 at 1-12 (declarations of Mike Gannon, Cameron Holzer, and Karen Carlson)

- Doc. 65-7 (excerpt from Karen Carlson deposition)

- Doc. 65-19 (one page of HR form documenting "recommendations" and "actions taken")

- Docs. 65-21, 65-24, 65-25, 65-28 (list of trips taken by Sellars and other class members)

- Doc. 65-29 (excerpt from employee handbook)

- Docs. 65-32, 65-33 (CRST's employment contracts with Fortune)

17

**Documents to be unsealed, except names, other identifiers, and the additional information noted below should be redacted:**

- Doc. 35-3 (excerpts from Karen Carlson deposition)—only previously redacted discussion of HR layover pay policy should be redacted (on transcript pages 28-30, 37, 146) (names or identifiers on previously redacted transcript pages 45, 127, and 173-75 should also be redacted)

- Doc. 35-28 (email thread discussing a student's re-training summarized in class-certification order) – redact actual training dates and unseal total number of days spent in training

- Doc. 35-31 (HR investigation form discussed in class-certification order) – redact underlying allegation and investigation information on pages 1-2 and at the top of page 3 (unseal Findings and Action/s Taken (Outcome) information)

- Doc. 35-33 (HR investigation form)—in addition to any names, phone numbers, and email addresses, the allegation box on page 1 should be redacted; the first and seventh questions and answers (of nine) on page 2 should be redacted; and the last four words of the interviewer's sixth question (of nine) on page 2 should be redacted

- Doc. 35-34 (email containing allegations of co-driver's sexual harassment)— on page 1, the "from" email address, name in the subject line, and everything below "to whom it may concern" should be redacted; the entirety of page 2 should be redacted; the entirety of page 3 should be redacted except the five sentences beginning with "On June 14, 2015, I chose to disembark. . . ." and ending with ". . . attempt to coerce me into continuing as co-drivers"; and on page 4, the first three sentences should be redacted (and names should be redacted from what is unsealed)

- Doc. 35-35 (email thread between manager and driver)—redact email sent at 5:29 P.M. on page 2 (containing additional allegation information)

18

- Doc. 55-1 at 40-70 (excerpts from transcript of deposition of Karen Carlson)—redact discussion of HR layover pay policy previously redacted from transcript filed at Doc. 60 (on transcript pages 28-37, 146) (the previously redacted information at transcript pages 127-28, 147, and 175 does not need to be redacted except for previously undisclosed names and other identifiers)
- Doc. 55-2 (orientation sheet, trip logs, payroll information, emails, HR investigation forms, and other documents related to the named plaintiffs and declarants) – redact in their entirety the orientation sheets, trip logs, and payroll information on pages 13, 33-34, 39-43, 53, 83-86, 116-20, 122-27, 156-60, 190-91, 198, 211, 230-234, 236-37 and 246-52 (unseal the remaining documents)
- Doc. 65-2 (HR investigation form)—redact top portion of form containing allegations and unseal bottom portion beginning at "11:03 a.m."
- Doc. 65-9 to 65-12 (HR investigation forms)—redact entirety of form except "Findings" and "Outcome" sections (and redact accused's name and promotion dates from the unsealed portion)
- Docs. 65-14 to 65-16 (HR investigation forms)—redact entirety of forms except "Outcome" sections

**Finally, the following exhibits should remain sealed:**
- Doc. 35-13 (offer letter for terminal manager)
- Doc. 35-14 (PWE charts compiled by HR summarizing sexual harassment complaints)
- Doc. 35-15 to 35-16 (driver compensation information)
- Doc. 35-19 (email chain discussing students' ability to request a female lead driver)
- Doc. 35-27 (email discussing HR layover pay)

19

- Doc. 35-36 (list of female drivers and their hire and termination dates)
- Doc. 65-1, Docs. 65-3 to 65-6, Doc. 65-8, Doc. 65-13, Doc. 65-17, Doc. 65-18, Doc. 65-20 (HR investigation forms containing previously undisclosed allegations)
- Docs. 65-22, 65-23, 65-26, 65-27, 65-31 (payroll statements)
- Doc. 65-30 (pay rates for drivers)

## IV.  SUPPLEMENTAL MOTION TO UNSEAL

The Interveners recently filed the supplemental motion (Doc. 176), seeking to unseal appendix II of CRST's decertification motion (Doc. 173).  The Interveners argue CRST has failed to demonstrate compelling reasons to seal these records.  CRST resists, arguing appendix II contains confidential information involving employee personnel information.  CRST also argues the brief submitted in support of its decertification motion (Doc. 172-1) generally describes the contents of the sealed documents and therefore additional unsealing is unnecessary.

Appendix II consists of a three-page table of contents and certificate of service and twenty five pages of documents.  The majority of these documents consist of HR investigation forms and reports.   There is also an email thread related to an investigation, an excerpt from a CRST Office Employee Handbook, and a termination letter.  Consistent with the framework set forth above:

- Table of contents and certificate of service (pages 1-3) should be unsealed
- Excerpt from CRST Office Employee Handbook (page 10) should be unsealed
- HR investigation forms and reports (pages 4-7, 9, 11-28) should be unsealed, except names, identifiers, and any previously undisclosed allegations should be redacted (any investigation outcomes and actions taken should be unsealed)
- Employee Resignation/Termination Form (page 8) should remain sealed

20

## V.    CONCLUSION

The motion to intervene (Doc. 126) is **granted**.   The motion to unseal (Doc. 127) and supplemental motion to unseal (Doc. 176) are **granted in part and denied in part**. Plaintiffs are responsible for redacting and refiling their briefs and exhibits; CRST is responsible for redacting and refiling its brief and exhibits.   The parties have sixty days from the date of this order (August 16, 2018) to file the unsealed briefs and exhibits (with redactions).

The parties should consider the framework set forth in this order in filing future pleadings and exhibits.   Any future motions to seal documents should specifically address the justification the moving party believes justifies sealing the specific documents the party seeks to seal (rather than making general assertions for all documents).

As the Interveners intervene for the limited purpose of unsealing documents, their appearance in this case will be terminated once the unsealed exhibits are filed.

**IT IS SO ORDERED** this 13th day of June, 2018.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa

21