# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| SCHEAVELLA CORLEY, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CRST EXPEDITED, INC.,<br><br>Defendant. | No. C15-117-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This matter is before me on a renewed motion (Doc. 290) for summary judgment by defendant CRST Expedited, Inc. (CRST). Plaintiffs have filed a resistance (Doc. 295) and CRST has filed a reply (Doc. 300). Oral argument is unnecessary. *See* Local Rule 7(c).

## II. BACKGROUND

On January 15, 2019, I granted CRST's motion for summary judgment on plaintiffs' class-wide retaliation claim, finding that plaintiffs had not demonstrated a genuine issue of material fact as to whether CRST maintained a policy, pattern or practice after July 1, 2015,[1] of not paying female drivers who were removed from their truck following a complaint of sexual harassment, or paying them substantially less than they would have made had they stayed on the truck. Doc. 204 at 32. Thus, plaintiffs had

---

[1] The class was divided between members who were removed from their trucks prior to July 1, 2015 (pre-2015 members), when CRST adopted an HR layover pay policy, and those who were removed after July 1, 2015 (post-2015 members).

failed to show an adverse employment action. With regard to the pre-2015 class members, I determined that there was a genuine issue of material fact as to whether the policy of requiring women who complained of sexual harassment to exit the truck and receive no pay constituted a materially adverse employment action. Doc. 204 at 34-35. However, I determined that the retaliation claim failed because plaintiffs had not put forth sufficient evidence for a jury to infer that CRST's articulated reasons for the policy were false and that the real reason was retaliation. Doc. 204 at 41. Plaintiffs' evidence consisted of the possible alternative of removing the alleged harasser from the truck, the temporal proximity to when the complaint was reported and evidence that CRST later instituted its HR layover pay. *Id.* at 35-41. The individual plaintiffs' claims relied on the same evidence. As such, I granted summary judgment with respect to those claims as well. Doc. 251 at 54-55.

On appeal, the Eighth Circuit affirmed summary judgment on the plaintiffs' individual retaliation claims as well as the class retaliation claim for the pre-2015 class members. Doc. 256 at 15. The court considered whether there was direct evidence of retaliation based on presentation slides from CRST's 2014 weekly HR employee relations meeting in which a PowerPoint slide titled "Questions/Discussion Items" stated:

> When drivers raise allegations of sexual or other issues of harassment, and we remove them from the truck . . . why is it that the accused can stay on earning money and the accuser gets stranded at a motel and loses money every day and has to wait for a new co-driver . . . Punished for raising concerns.

*Id.* at 13. The court concluded that this could not be considered a "comment by a decisionmaker," *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc), and – even if it could – it did not show a "specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action." *Id.* at 14 (quoting *Torgerson*, 643 F.3d at 1046). The court observed that the comment "questioned – rather than supported – the

allegedly discriminatory policy, and thus it does not reflect any motivative discriminatory bias on the decisionmaker's part." *Id.* The court then applied the *McDonnell Douglas* burden-shifting framework to determine if plaintiffs raised an inference of retaliation. *Id.* Plaintiffs argued that the PowerPoint slide's characterization of the policy as "punishment" and CRST's knowledge of the unchanged removal policy was sufficient to show pretext. The court disagreed and concluded plaintiffs failed to demonstrate a genuine dispute that retaliatory intent likely motivated CRST. *Id.* at 15.

As to the post-2015 class members, CRST had changed its pay policy on July 1, 2015, such that sexual harassment complainants who were removed from trucks would receive layover pay. CRST did not inform its employees of this change in policy to ensure it was used for the correct purposes. The Eighth Circuit concluded that after the policy change, employees would have the same expectation as before – a net decrease in pay after complaining. *Id.* at 16. Therefore, the court concluded the post-2015 class members were subject to the same adverse employment action as the pre-2015 class members and remanded the case to determine whether direct or circumstantial evidence establishes that CRST took this adverse employment action in retaliation for the post-2015 class members' Title VII-protected activity. *Id.* at 17.

On remand, plaintiffs were granted leave to file a first amended complaint (Doc. 271) with substituted plaintiffs. *See* Docs. 270, 280. Pursuant to the parties' joint proposed summary judgment briefing schedule (Doc. 287) adopted by the court, CRST filed its renewed motion (Doc. 290) for summary judgment on plaintiffs' retaliation claim for post-2015 class members on August 15, 2022, followed by plaintiffs' resistance and CRST's reply. The parties rely on their previously-filed statements of material facts, responses and appendices. *See* Docs. 171, 187, 198.

3

## III. ANALYSIS

CRST argues that the failure to publicize the HR layover pay policy in July 2015 has no effect on the remainder of the analysis of the retaliation claim, which it contends should be similar to that for the pre-2015 class. As with that claim, CRST argues plaintiffs have failed to come forward with evidence to demonstrate retaliatory intent.

### A. *Undisputed Facts*

The following relevant facts are undisputed:

CRST is a long-haul freight transportation company that utilizes a team driving model such that one driver may sleep while the other is driving. New drivers with CRST are paired with lead drivers to undergo training. Once training is completed, they may pair with a partner or co-driver of their choosing. Drivers are paid by the load, calculated by mileage. Thus, drivers only earn pay when they are driving a truck. CRST employees are instructed to immediately report any harassment.

When a driver complains of harassment while on the road, CRST's policy is to remove the complainant from the situation, unless the complainant is the lead driver or owner-operator of the truck. As of July 1, 2015, CRST may also provide the complainant HR layover pay until CRST can pair that driver with a new co-driver. HR layover pay is calculated as a daily amount equal to ten times the highest minimum wage in the country. CRST did not inform its employees of the change in policy regarding availability of HR layover pay. Employees only learn about the availability of HR layover pay after making a complaint of sexual harassment.

### B. *Analysis*

On remand, the issue is limited to whether plaintiffs can demonstrate a genuine issue of material fact that CRST's policy of removing women from their trucks in response to their sexual harassment complaints was motivated by retaliation. The Eighth

4

Circuit determined that the removal constituted an adverse employment action for post-2015 class members because they had the same expectation as pre-2015 class members that removal would result in no pay or a substantial reduction in pay. Plaintiffs argue a jury should determine whether CRST's intentional concealment of the availability of HR layover pay makes it more likely than not that CRST's reasons for its removal policy are pretextual. They contend a jury could conclude that the creation of the HR layover pay was not intended to benefit women, but to avoid minimum wage violations. They also argue that concealment of the HR layover pay could be considered evidence of retaliatory intent.

Because plaintiffs do not present any direct evidence of retaliation, I will analyze their claim under the *McDonnell Douglas*[2] burden-shifting framework. *See Banford v. Bd. of Regents of Univ. of Minn.*, 43 F.4th 896, 899 (8th Cir. 2022). Under this framework, "a plaintiff must first 'establish a prima facie case of retaliation,' and if he succeeds, 'the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the action.'" *King v. Guardian ad Litem Board*, 39 F.4th 979, 986 (8th Cir. 2022) (quoting *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 829 (8th Cir. 2013)). "If the employer does so, the burden shifts back to the plaintiff to demonstrate that the stated reason is pretextual." *Id.* (quoting *Naguib v. Trimark Hotel Corp.*, 903 F.3d 806, 811 (8th Cir. 2018)). One way to show pretext is by "demonstrating that the employer's stated reason for the termination is false." *Williams v. United Parcel Service, Inc.*, 963 F.3d 803, 808 (8th Cir. 2020) (citing *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 794 (8th Cir. 2011)). However, if plaintiffs choose this route, they must show "*both* that the reason was false, *and* that [retaliation] was the real reason." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 515 (1993) (emphasis in original)).

For purposes of this motion, CRST concedes that plaintiffs can establish a prima

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

facie case of retaliation and plaintiffs assume, for purposes of this motion, that CRST can advance a legitimate, non-discriminatory reason (i.e., safety) for the removal policy. Therefore, the issue centers on whether plaintiffs have adduced evidence that CRST's reason for the policy is pretext for retaliation.

Plaintiffs argue they have demonstrated a fact issue as to pretext with the following evidence: (1) the creation of HR layover pay was not to benefit women, but to avoid minimum wage violations, and (2) CRST concealed the availability of HR layover pay. Each of these fails to demonstrate a fact issue. With regard to evidence that CRST sought to avoid minimum wage violations, plaintiffs rely on deposition testimony of a CRST HR representative:

> Q: . . . You referenced a minute ago . . . bullet point number 5, that says "CRST will pay the accuser at a rate of $100 per day in which they are without a team driver." Who determined the figure of $100 per day?
>
> A: The HR team did.
>
> . . .
>
> Q: And what was the basis of picking $100?
>
> A: Average hours worked per day, ten – ten hours of driving time. And then we adhered to the California minimum wage at that – When this was documented, it was $10 an hour. So ten hours times $10 per hour equates to the $100, which now has obviously increased to 105 due to the recent minimum wage increase, so we adhered to that minimum wage.
>
> Q: So the idea of picking that figure is to be in compliance with California, which is the highest minimum wage?
>
> A: Highest, correct. Even if they are not a California employee.

Doc. 187-1 at 18. As CRST points out, this testimony demonstrates how CRST determined the *amount* of HR layover pay, not why it was implemented. *See* Doc. 300 at 8 ("it is only *because* CRST removes complaining drivers from their trucks for their

6

safety, and creates special pay for them, that questions about the appropriate *amount* of that pay become relevant.") (emphases in original). Evidence that CRST sought to avoid minimum wage violations in implementing its HR layover pay does not establish a retaliatory motive for the removal policy. *See Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 694 (8th Cir. 2021) (explaining that to show pretext, plaintiffs must "both discredit CRST's proffered reasons for the alleged retaliatory action and show that the circumstances permit drawing a reasonable inference that retaliation was the real reason for the adverse employment action.").

As for concealment of the HR layover pay, plaintiffs argue a jury could determine that by concealing this form of pay, CRST intended to deter women from making complaints of sexual harassment by intentionally leaving them with the belief that doing so will cause them to lose pay as a result of being removed from the truck. CRST maintains that it did not inform employees of the availability of HR layover pay so as to deter frivolous complaints. Plaintiffs argue a jury can reasonably conclude this was not CRST's real reason for hiding the existence of HR layover pay and can infer the real reason was to deter all complaints.

CRST argues that any alleged deterrence would be no different than for the pre-2015 class members. The Eighth Circuit has concluded that any knowledge by CRST of possible negative consequences from its removal policy did not constitute evidence of retaliatory intent. *See Sellars*, 13 F.4th at 694-96. CRST contends that the addition of HR layover pay (the only real difference between the pre-2015 subclass and post-2015 subclass) to *avoid* negative consequences cannot transform the removal policy into a retaliatory one.

Plaintiffs "must show that a retaliatory motive was the but-for cause of the adverse action." *Sellars*, 13 F.4th at 695 (citing *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017)). The Eighth Circuit held that after July 1, 2015, CRST's removal policy remained an adverse action because the availability of HR layover pay was

7

unknown to employees. Thus, employees had the same expectation that a report of sexual harassment would result in removal from their trucks and a pay cut. Plaintiffs argue that the concealment of the pay also demonstrates CRST's retaliatory motive for the removal policy. Of course, prior to July 1, 2015, there was no HR layover pay. Under those circumstances, the Eighth Circuit agreed that plaintiffs lacked evidence of retaliatory animus.

To conclude a jury could find CRST's removal policy was motivated by retaliation after July 1, 2015, based on evidence that CRST did not inform employees of a newly available benefit, would make no sense. Plaintiffs seem to conflate the adverse action at issue (the removal policy), by suggesting that concealment of the HR layover pay is a second adverse action that CRST must justify with a legitimate, nonretaliatory reason. But the Eighth Circuit made clear that the concealment of the HR layover pay was why the removal policy remained adverse after July 1, 2015 – because it left employees with the same expectation of the consequences of removal prior to July 1, 2015. In other words, it was not an adverse action in itself. To the extent the concealment of the HR layover pay could be considered integrated into the adverse action, CRST argues that its legitimate, nonretaliatory reason for not disclosing it to employees was to ensure that the HR layover pay was used for legitimate complaints of sexual harassment. In light of that reason, plaintiffs have offered evidence that that reason was false by suggesting that it was implemented to avoid minimum wage violations, but they have failed to offer evidence that the real reason was retaliation for the protected activity of reporting sexual harassment.

The fact that CRST sought to avoid any minimum wage violations in implementing the HR layover pay is not evidence of a retaliatory motive. CRST's justification for concealing the availability of HR layover pay was to ensure it was used for legitimate complaints and to deter frivolous complaints. "Creating a genuine issue of material fact regarding pretext requires more substantial evidence than it takes to make a prima facie

8

case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." *Hairston v. Wormuth*, 6 F.4th 834, 843 (8th Cir. 2021) (quoting *Yearns v. Koss Const. Co.*, 964 F.3d 671, 675 (8th Cir. 2020)). Even if a jury could infer that CRST's proffered reason was false by plaintiffs' evidence that CRST was really seeking to avoid minimum wage violations, there is no evidence that the removal policy and concealment of the HR layover pay was motivated by retaliation.

Plaintiffs argue the real reason for removal and concealment of HR layover pay was to deter all complaints, but even in the absence of the HR layover pay, there was no evidence of retaliatory motive. Evidence that CRST did not inform its employees of a new benefit that was available to complainants so as to avoid the negative consequences associated with removal prior to July 1, 2015, cannot turn the previously non-retaliatory removal policy into a retaliatory one. Concealment of the availability of HR layover pay after July 1, 2015, is insufficient to generate a fact issue that CRST's removal policy (which remained unchanged) was motivated by retaliation. Additionally, to allow an inference that the concealment of the HR layover pay, in addition to the removal, was retaliatory based on the concealment itself is circular and nonsensical. Plaintiffs have failed to demonstrate a fact issue on retaliatory motive based on concealment of the HR layover pay.[3]

Because plaintiffs have not offered evidence that would allow a reasonable inference of retaliatory animus by CRST as to the removal policy after July 1, 2015, they have failed to demonstrate a genuine issue of material fact on the post-2015 class retaliation claim. CRST is entitled to summary judgment on that claim.

---

[3] To the extent plaintiffs attempt to demonstrate a fact issue as to retaliatory motive based on what complainants actually received in HR layover pay, I find such evidence to be immaterial. The focus is on CRST's motive regarding the removal policy. *See Donathan*, 861 F.3d at 739 ("The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action.").

9

## IV. CONCLUSION

For the reasons set forth herein, CRST's renewed motion (Doc. 290) for summary judgment on plaintiffs' class retaliation claim for the post-2015 class members is **granted**. Because this order disposes of all pending claims, judgment **shall enter** in favor of CRST and the Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 11th day of January, 2023.

_____
Leonard T. Strand, Chief Judge